## Huber's Appeal. Gaul's Estate.

1. A testator directed that his real and all his residuary personal estate should be in the care of his executors during his wife's life; from the income to pay his wife an annuity, the remainder of the income to be divided into eighths, one to each of four sons absolutely, one to be paid to each of three daughters; one to his son Jacob, or "at the option" of the executors to apply it to his support, as they might see fit, so that it should not be liable "to his disposal, order, debts, control or engagements, and in case of his decease" to apply the same for the support of his child or children. Upon the death of the testator's wife, he gave an eighth absolutely to each of the four sons; one eighth to the separate use of each of the daughters; one eighth to Jacob for life, and after his decease "to all his children living, and the issue of such of them as may be then dead, their heirs and assigns for ever in equal parts, such issue taking and among themselves dividing such share only as their deceased parent would have taken" provided that Jacob's share should remain in the care of the executors "as his trustees," the income during his life "to be paid to him or applied by them at their option for his support, &c., so that the same shall not be liable to his disposal or subject to the payment of his debts." There was no further direction as to Jacob's share. *Held*, (1.) That Jacob took but a life interest. (2.) That the accumulation of the income of the fund for Jacob which had not been applied for him remaining in the hands of the trustees did not pass to his administrator.

2. In ascertaining the intention of the testator, "children" primarily is a word of purchase.

3. The construction of testamentary words must always depend in some measure on the special facts.

4. Where a clause in a will is obscure or ambiguous, words which manifest an intention to dispose of the whole of testator's estate, are to be construed as passing a fee.

5. It is of weight in construing a devise in remainder to be a fee that there is no limitation over.

6. Where the meaning is clear from unmistakable language, the will interprets itself, and subsidiary facts are not to be introduced in order to create a doubt.

7. The extent and character of a devise depends on the qualities stamped and powers conferred on it by the testator, not alone in the parties in whom the title is formally vested.

8. Ashhurst's Appeal, 27 P. F. Smith 464; Dodson *v.* Ball, 10 P. F. Smith 492; Earp's Appeal, 25 P. F. Smith 119; Horwitz *v.* Norris, 13 Wright 213, followed. Haldeman *v.* Haldeman, 4 Wright 29; Yarnall's Appeal, 20 P. F. Smith 335, distinguished.

January 14th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Philadelphia :* Of January Term 1874, No. 174. In the estate of Jacob Gaul, deceased.

The question in this case arose under the will of Frederick Gaul, Sr., who died on the 30th of June 1831, owning a large real and personal estate. His will was dated August 1st 1825. He appointed his wife Clarissa, and his sons Frederick Gaul and William Gaul the executors of his will.

He gave to his wife all his household and kitchen furniture and things provided for family use.

The will then proceeded :—

[Huber's Appeal.]

" I do hereby direct that all my real and residuary personal estate shall be in the care and management of my said executors and the survivors and survivor of them for and during all the term of the natural life of my said wife, the real estate to be let, &c., for the best yearly rent, &c., and the said residuary personal estate to be placed out and continued at interest on good security or to be invested in some of the public stocks or securities producing an interest or dividends, * * * and to receive the rents, &c., and from and out of the said rents, &c., so to be received that they do and shall in the first place pay, &c., so much thereof as may be necessary for keeping and supporting my real estate in good and complete tenantable order and repair, and paying the taxes and ground-rent to become due for the same and for defraying all reasonable costs and expenses attending the execution of their trust and a reasonable allowance to my said executors for their care and trouble in the premises. And in the second place out of the said rents, &c., I give and hereby authorize my said wife to retain for her use the sum of $2000 yearly and every year from the day of my decease for and during all the term of her natural life in quarterly portions. And all the rest and residue of the said rents, &c., I give and direct the same to be paid in equal eighth parts in half yearly payments for and during all the term of the natural life of my said wife, in manner following, viz. ; one eighth part thereof to my said son Frederick, his executors, administrators and assigns; another eighth part thereof to my son Martin, his executors, &c., another eighth part thereof to my said son William, his executors, &c., another eighth part thereof to my son Joseph, his executors, &c., another eighth part thereof I direct to be paid to my son Jacob, or at the option of my said executors, I authorize them to appropriate and apply the same for the support and maintenance of my said son Jacob as they may see fit and proper, and so that the same or any part thereof shall not be liable or subject to his disposal, order, debts, control or engagements, and in case of his decease then to appropriate and apply the same for the support, maintenance and education of his child or children ; and the remaining three eighth parts thereof shall be considered to be in the custody and care of my executors as trustees for my daughters respectively, one of the said eighth parts to be paid to my daughter Mary, into her own hands, for her sole and separate use, without being in any wise subject or liable to the debts, control or interference of any husband, * * * and upon her decease then to apply the same for the support, maintenance and education of her child or children ; one other of the said eighth parts to be paid to my daughter Catharine, into her own hands, for her sole and separate use, in the same and like manner as I have hereinbefore directed with respect to my said daughter Mary, * * * and upon her decease then to apply the same for the support, maintenance and education of the

child or children of my said daughter Catharine; and the other eighth part to be paid to my daughter Elizabeth in her own hands for her sole and separate use in the same manner as I have hereinbefore directed with respect to my said daughter Mary, * * * and upon her decease then to apply the same for the support and maintenance and education of her child or children. And from and immediately after the decease of my said wife, I give, devise and bequeath all my real estate and residuary part of my personal estate in manner following, that is to say; one full equal eighth part thereof to my said son Frederick, his heirs, &c., another eighth part thereof to my said son Martin, his heirs, &c., another eighth part thereof to my said son William, his heirs, &c., another eighth part thereof to my said son Joseph, his heirs, &c., another eighth part thereof to my said daughter Mary, for and during all the term of her natural life, and after her decease to all her children then living, and the issue of such of them as may be then dead, their heirs and assigns for ever, in equal parts, such issue taking and among themselves equally dividing such part and share only as their deceased parents would have taken if living; another eighth part thereof to my said son Jacob for and during all the term of his natural life, and after his decease then to all his children then living, and the issue of such of them as may be then dead, their heirs and assigns for ever in equal parts, such issue taking and among themselves equally dividing such part and share only as their deceased parent would have taken if living; another eighth part thereof to my said daughter Catharine for and during all the term of her natural life, &c. (as in Mary's and Jacob's devise); and the remaining eighth part thereof to my said daughter Elizabeth for and during all the term of her natural life, &c. (as in Jacob's and Mary's devise). Provided always and it is my mind and will that the parts and portions of my estate hereinbefore devised to and for the benefit of my said daughters respectively, shall be and remain in the care and management of my said executors and the survivor of them for and during the term of their natural lives respectively to receive the rents, &c., * * * pay over the same to my said daughters respectively to whom the same may belong into their own hands for their sole and separate use. * * * And provided also, and it is my mind and will that the part and share of my estate hereinbefore devised for the benefit of my said son Jacob shall be and remain in the care and management of my said executors as his trustees, the interest and income of which for and during all the term of his natural life, I direct to be paid to him or to be applied by them at their option for his support and maintenance so that the same shall not be liable to his disposal or subject to the payment of his debts." * * *

On the 6th of May 1871, James S. Huber, administrator, &c., of Jacob Gaul, deceased, presented a petition setting out the pro-

visions of the will of Frederick Gaul relating to Jacob Gaul; the petition further set out that Frederick Gaul left seven children, viz., Jacob, Frederick, Martin, Mary, Catharine and Elizabeth, Joseph having died in his father's lifetime; that Jacob died on the 9th of March 1871, intestate, unmarried and without issue; that Clarissa Gaul, the widow of the testator, had been dead many years; that Frederick Gaul and William Gaul undertook the trust; that William lately died, leaving a will, of which Sarah Gaul, Simon Delbert and George H. Oberteuffer were the surviving executors; that Frederick Gaul, Jr., had lately died leaving a will, of which Mary Ann Gaul was the executor, and that no account of the trust estate of Jacob Gaul had ever been settled. The prayer was for a citation to the executors, &c., of William Gaul and the executors, &c., of Frederick Gaul, Jr., to settle an account of Frederick Gaul, Jr., and William Gaul, trustees, under the will of Frederick Gaul, Sr., of Jacob Gaul, deceased.

The executors of William Gaul answered, averring matters of fact; the answer contained also a demurrer as follows:—

" Defendants demur to the same, and to the right of said Huber, as administrator of Jacob Gaul, to ask any account of them, inasmuch as the said Jacob Gaul left no estate to be administered to, the whole of his estate under the will and the intestate law, and all accretions thereof, being the fruit of the tree from which they sprung, follow and belong to the tree, and Jacob therefore left nothing to be administered to."

The Orphans' Court dismissed the petition, Allison, P. J., who delivered the opinion, saying:— * * *

" The respondents set up that Huber, as administrator of Jacob, had no interest, and upon this ground they demur to the petition. Huber has no standing if Jacob Gaul took only a life estate under the will of his father. Our judgment upon this point is, that Jacob's interest was that of a tenant for life only, and that he did not take a fee or a fee tail, as petitioners contend. The estates to the daughters and to Jacob were but life estates, with contingent remainders to their children living at their death, or the issue of deceased children. Until the happening of the contingency, and vesting of the remainders, the fee descended to the children of Frederick Gaul, Sr., as his heirs at law, The case of Haldeman v. Haldeman, 4 Wright 29, seems to rule this question. * * * This conclusion is, we think, also sustained by Guthrie's Appeal, 1 Wright 14; Chew's Appeal, Id. 23; Walker v. Milliken, 9 Id. 178; Fetrow's Estate, 8 P. F. Smith 424; Buzby's Appeal, 11 Id. 111. Yarnall's Appeal, 20 Id. 335, is not, we think, against this conclusion. There the trust was to pay income for life to daughters, with power of appointment given to the daughters by will, and in default of such appointment, to such persons as would take the estate had they died intestate *seised thereof in fee*. Nor

is Ogden's Appeal, 20 P. F. Smith 504, an authority for the position assumed by the petitioners. The court held, that the language of the will and the intent of the testator carried the fee to the first taker.

" Nor can an account of accretions of unpaid income be demanded. The income was not, in any way, at Jacob's disposal. The trustees were to appropriate income for Jacob's support, or were authorized to pay income to him: Horwitz *v.* Norris, 13 Wright 213, is strongly in point; there the direction was to pay over net income for maintenance for life. This was held not to create a legal or equitable estate for life in the lands; the tenant could not sell or dispose of his interest as life tenant, nor could he dispose of the same by will. See also Shankland's Appeal, 11 Wright 113."

Huber appealed to the Supreme Court, and in several specifications, assigned the decree of dismissal for error.

*R. L. Ashhurst* and *Chapman Biddle* (with whom was *W. S. Price*), for appellants.—The estate as to which an account is asked, is that which was devised by Frederick Gaul's will for the benefit of Jacob ; the accretions and accumulations in the hands of the trustees, Jacob not having received the income of the fund, and the portion of Frederick Gaul's estate of which he died intestate. The whole will shows that the testator intended to pass his whole estate ; the gifts to the other children being fees, the presumption is Jacob's was the same; and if not, still it was a fee under the rule in Shelley's Case, Jacob taking a life estate with contingent remainder to his children ; if none, then to him and his right heirs under the intestate laws. This being part of the residue it cannot as an undevised or lapsing part fall into the residue : Hawkins on Wills 42 ; Redfield, ch. 8, sect. 8 ; Hamble *v.* Shore, 7 Hare 247 ; Sykes *v.* Sykes, 4 Eq. Cas. 200. The limitation to Jacob passed a fee: Yarnall's Appeal, 20 P. F. Smith 335 ; McKee *v.* McKinley, 9 Casey 92 ; Haldeman *v.* Haldeman, 4 Wright 29. There being no devise over, the word " children" is used to indicate the whole line of succession : Wild's Case, 6 Reports 17 ; Hawkins on Wills 198 ; Potts's Appeal, 6 Casey 170 ; Price *v.* Taylor, 4 Id. 95 ; Dodson *v.* Ball, 10 P. F. Smith 493 ; Williams *v.* Leech, 4 Casey 90. The interposition of a trustee will not prevent the beneficiary from taking an absolute estate : Keyser's Appeal, 7 P. F. Smith 236 ; Physick's Appeal, 14 Wright 135. Where the general intention is clear and effect cannot be given to all the language expressing some particular interest, this must yield to the general intent : Redfield on Wills 432 ; Doebler's Appeal, 14 P. F. Smith 15 ; Leech *v.* Robinson, 24 Id. 273 ; Ogden's Appeal, 20 Id. 508. The inclination of courts is so to construe a residuary bequest as to prevent an intestacy : Bayard *v.* Atkins, 10 Barr

18; Patterson v. Swallow, 8 Wright 490; Roberts's Appeal, 9 P. F. Smith 71; Geyer v. Wentzel, 18 Id. 86. As to the accretions and accumulations: If the whole income of property be given and a special purpose assigned for the gift, it is regarded as absolute, and the purpose merely the motive, and the gift takes effect as to the whole income: Sanderson's Trust, 3 Kay & Johns. 497; Beever v. Partridge, 11 Simon 231; Barber v. Barber, 3 Myl. & Cr. 690; Hanson v. Graham, 6 Ves. 239.

*C. J. Pancoast* and *G. W. Biddle* (with whom was *W. W. Juvenal*), for appellees.—Jacob took but a life estate; "children" here is a word of purchase: Walker v. Milligan, 9 Wright 178; Cote v. Von Bonnhorst, 5 Id. 250; Fetrow's Estate, 8 P. F. Smith 424; Busby's Appeal, 11 Id. 111; Wickersham v. Savage, 8 Id. 370. To hold that Jacob took a fee by implication is contrary to the expressed gift of the testator; all devises by implication are decided on the principle of carrying into effect the supposed intention of the testator; Rathbone v. Dychman, 9 Paige 27. The trust for Jacob was an active one: Earp's Appeal, 25 P. F. Smith 123; consequently the legal estate for life was in the trustees and could not therefore coalesce with a subsequent equitable estate. As to the accretions, they cited Horwitz v. Norris, 13 Wright 213; Dillin v. Wright, 23 P. F. Smith 178; Vaux v. Parke, 7 W. & S. 19; Perry on Trusts, sect. 388.

Mr. Justice WOODWARD delivered the opinion of the court, May 8th 1876.

Frederick Gaul, Sr., died in the year 1831, leaving seven children. Before that time, and after the 1st of August 1825, the date of the execution of his will, his son Joseph had died. Having bequeathed his furniture and plate to his wife, the testator committed his residuary real and personal estate to the care and management of his executors. They were authorized to receive the annual income, and out of it were directed to pay $2000 a year to his wife, and to pay the residue semi-annually in equal parts to his eight children. The provision in favor of his son Jacob was in these words: "Another eighth part I direct to be paid to my son Jacob, or, at the option of my said executors, I authorize them to appropriate and apply the same for the support and maintenance of my said son Jacob, as they may see fit and proper, and so that the same, or any part thereof, shall not be liable to his disposal, orders, debts, control or engagements; and in case of his decease, then to appropriate and apply the same for the support, maintenance and education of his child or children." Upon the death of the widow, a distribution in equal eight parts was directed. One of these parts was given to Jacob "for and during all the term of his natural life, and after his decease, then

30 P. F. SMITH—23

to all his children then living, and the issue of such of them as
may be then dead, their heirs and assigns for ever, in equal parts;
such issue taking, and among themselves equally dividing, such
part and share only as their deceased parents would have taken if
living." In the concluding paragraph of the will the testator
declared: "It is my mind and will that the part and share of my
estate hereinbefore devised for the benefit of my said son Jacob,
shall be and remain in the care and management of my said exe-
cutors as his trustees, the interest and income of which, for and
during the term of his natural life, I direct to be paid to him, or
to be applied by them, at their option, for his support and main-
tenance, so that the same shall not be liable to his disposal or sub-
ject to the payment of his debts." Letters testamentary were
granted to Frederick Gaul, Jr., and William Gaul, two of the
executors appointed by the will.

After the death of Jacob Gaul, on the 9th of March 1871, let-
ters of administration on his estate were issued to James S. Huber,
the appellant, by whom the present proceeding was instituted to
enforce a settlement of the accounts of the executors as trustees
of the estate devised for the benefit of Jacob by his father. Both
the trustees were dead, and their executors were made parties to
the proceeding. After hearing, the petition was dismissed by the
Orphans' Court.

In this appeal the questions presented and argued have relation
to the right of the appellant to an account, first, of the principal
of Jacob's share; secondly, of the accumulated income received
during Jacob's lifetime, and not paid to him, nor appropriated for
his support; and thirdly, of the interest of Jacob in the share of
his brother Joseph, which had lapsed; and in property acquired
by Frederick Gaul, Sr., after the date of his will, as to which he
died intestate. Upon the first question, it is claimed by the appel-
lant's counsel, that the terms of the devise require the applica-
tion of the rule in Shelley's case, and that a gift for life having
been made to Jacob, the provision that the share should go, "after
his decease, to all his children then living, and the issue of such
of them as may be then dead, their heirs and assigns for ever,"
defined an entire line of succession, limited an inheritance to the
children as the heirs of Jacob, and created in him, therefore, an
estate in fee, or at least in tail. Haldeman *v.* Haldeman, 4 Wright
29, and Yarnall's Appeal, 20 P. F. Smith 335, were especially
pressed as authorities for this position. In the first of these cases,
a testator by will directed his executors to account for and pay
over half-yearly to his three daughters, "and to each of them
during their natural lives, the income and profit arising out of each
of their shares of the residue, and after the death of either, then to
descend and go to the child, and if children, share and share alike.
Should, however, either of my daughters die, and leave no lawful

issue, then such share or portion is to fall back again to the residue, and form a part of the same." It was held that each daughter took an estate tail in the residue of the testator's estate, which, under the Act of the 27th of May 1855, became an estate in fee simple. In Yarnall's Appeal, the testatrix gave the residue of the estate in trust for the use of all her children living at her death, and the issue of such as might be then dead, in equal parts. The trustee was to hold the shares of the daughters, and to pay the income during their lives, "free from the debts of any husband they may have or take ; and after their death, to pay the daughters' shares according to their will.· In default of wills, the daughters' shares to be paid to such person or persons as would be entitled to the same in case they had survived their respective husbands, and departed this life seised thereof in fee." It was decided that the daughters took absolute estates in fee simple. On the other hand, it is insisted that nothing in those cases is essentially in conflict with Guthrie's Appeal, 1 Wright 9 ; which decided that although the rules of construction permit the words "heirs of the body," or "issue," to be used in the limited sense of "children," and the word "children," which primarily indicates not heritable succession, but individual acquisition, to be used in the more comprehensive sense of the words "heirs of the body," in cases in which a clear explanation will justify a departure from their ordinary meaning, yet there must be an express warrant for this change, under the hand of the author of the gift, and conjecture, doubt or even equilibrium of apparent intention, will not suffice. The testator there devised a tract of land to his daughter for life, and provided for its disposition at her decease, as follows : "The said lot or tract of land I hereby bequeath to such of her children, or their heirs, as may survive her, as tenants-in-common. The child or children of any deceased child of hers shall hold the same interest and right that the deceased parent would have held if living." The daughter's estate was held to be for life, and not a tenancy in tail.

It is no part of the purpose now in view to examine the long line of authorities bearing upon this perplexed and intricate branch of the law of Pennsylvania. The currents of decision, cross, counter and direct, have been traced in a case so recent as Dodson v. Ball, 10 P. F. Smith 492, from Lancaster v. Dolan, 1 Rawle 231, down to Rife v. Geyer, 9 P. F. Smith 393. One element in the long conflict is for the present at rest. Earp's Appeal, 25 P. F. Smith 119 ; Ashhurst's Appeal, 27 Id. 464, and Ash's Appeal, 2 Weekly Notes 360, have settled principles beyond controversy to prove that this will created an active and operative trust. "The decisions in all the cases," it was said by the present Chief Justice in Dodson v. Ball, "show the undoubted tendency of the judicial mind in this state to follow the true intention of the donor, and

whenever he means to limit an estate to the heirs of the life tenant, no matter how his intent is expressed, an estate of inheritance will vest in the tenant for life; but when he intends his bounty to vest in certain persons, though they may be the same as the heirs at law, the life estate will not be enlarged." And in Yarnall's Appeal, in which the opinion was delivered by the same judge, it was said that where the testator intends the estate to go to the whole body of persons constituting in law the entire lineal descent, he means " issue," or " heirs of the body;" and where he intends it to go to the whole line of descent, lineal and collateral, he means " heirs;" that technical phrases in wills, as well as forms of expression decided in other cases, are not permitted to overthrow the intent of the testator, when that intent is clearly ascertained to be different in the will under examination by the court; that the rule in Shelley's case is not in reality an exception to the rule that the intention of the testator must guide in interpreting a will, but only sacrifices a particular to a general intent; and that it is only when a will has been interpreted by the ordinary principles of construction that the rule is to be applied, and is not itself the medium for discovering the intention of the testator. In ascertaining that intention, however, one of the ordinary and most familiar principles of construction is, that the word " children " is primarily a word of purchase. Do the other terms of the will of Frederick Gaul, Sr., prove that he used it as a word of limitation? It is to be observed that he employed no other word in describing his son Jacob's immediate descendants. The devise was to " all his children then living, and the issue of such of them as may be then dead." If Jacob had had children, none of whom had died, nothing in the testator's mode of referring to them would have indicated that he intended to do more than designate the individuals to whom he designed, after his son's death, to transmit the estate. The word " issue " was employed in a superadded clause of distribution. It is not like the case of Haldeman *v.* Haldeman, where the provision in favor of the children of the testator's daughters was followed by a disposition of the estate if the daughters " should die and leave no lawful issue." Nor is it like Yarnall's Appeal, where the tenants for life were authorized to devise their shares, and " in default of wills," the shares were to be paid to " such person or persons as would be entitled to the same if they had departed this life seised thereof in fee." Even if a life estate could be said to have been vested in Jacob, the terms of the will were not adequate to enlarge it to a fee simple or fee tail.

The decision of every case involving the construction of testamentary words must depend in some measure on its special facts. In the present case, Jacob Gaul was not clothed with dominion over the interest devised to him, even during his own life. While one-eighth of the testator's residuary estate was given to him in

the clause directing distribution upon the death of the widow, the concluding paragraph of the will declared that his share should remain in the hands of the executors as his trustees; that it should be at their option whether the income derived from it should be paid to him, or be applied by them to his support; and that "the same" (the income) should "not be liable to his disposal or subject to the payment of his debts." The legal title was vested in the trustees, as the effect of these provisions, and his control even over the income was withheld. This was not such a gift of "an estate of freehold" to Jacob, as, under the rule in Shelley's case, or under any principle in analogy to that rule, would support a limitation to his heirs. The actual gift of the estate, as such, was to the trustees, and not to Jacob Gaul. In Physick's Estate, 14 Wright 128, relied on by the appellant's counsel, the devise was to Emlen Physick, subject to the same trusts and limitations as had been appointed for the testator's nieces, each of whom was to receive the income of one-third of the testator's estate from the trustees in whom the legal title was vested, without being subject to the contracts, debts, control or interference of their husbands. This provision could not have been held to be imported into the devise in favor of Emlen Physick, for the effect would have been to annul the gift. The question, however, was not raised. All that was decided in Keyser's Appeal, 7 P. F. Smith 236, was, that a devise in fee with a condition that it should not be liable for the debts of the devisee vested the estate free of the condition, which was held to be as repugnant to the estate devised as a provision in restraint of alienation. It is not necessary to express an opinion as to the effect upon the estate of a devisee for life, of a simple provision that it should not be subject to his debts. It might be absolute, nevertheless. But here there is more than that. The income was withdrawn from the "disposal" of Jacob. Whether any of it should reach his hands depended on the exercise of the discretion of the trustees. If the devise to the children and their issue had been in undoubted words of limitation, the rule in Shelley's case would not apply. An estate, such as gives room for the application of the rule, may be either legal or equitable, but to entitle him to take by limitation an estate of freehold must be vested in the tenant for life. Here, one interest was given to the ancestor, and an entirely different interest was devised to the children. The estate was vested in the trustees to support the contingent remainder, charged with the burden, during his lifetime, of the support of Jacob Gaul.

There is no doubt of the rule that where a clause in a will is obscure or ambiguous, words which manifest an intention on the part of the testator to dispose of his whole estate, are to be treated as favoring the construction, that he meant to pass a fee: Geyer v. Wentzel, 18 P. F. Smith 84. So, where a will contains no limi-

[Huber's Appeal.]

tation over after a devise in remainder, that fact is to be weighed
in support of the same construction in ascertaining the testator's
intention : Grove's Estate, 8 P. F. Smith 432 ; Ogden's Appeal,
20 Id. 504.  But, when the meaning is clear from language that
is unmistakable, the instrument interprets itself, and subsidiary
facts are not to be introduced in order to create a doubt.  This
case is not one to require a resort to any merely illustrative ele-
ments of investigation.

In the second place, the accumulation of the income in the hands
of the trustee during the lifetime of Jacob Gaul, are claimed by
the appellant.  It is contended that the moneys unexpended for
his support and maintenance were his property, irrespective of
the nature of the estate devised to him ; that they could not have
passed as trust funds to his children, if he had left children, and
that they do not go to the heirs of the testator for want of children,
but to the administrator.  This question is regarded as having
been definitely determined by the case of Horwitz *v.* Norris, 13
Wright 213.  Joseph Parker Norris had given one-sixth part of
his Fairhill estate to trustees, with power to demise the premises
and collect the rents, and with direction, after paying certain taxes
and other charges, to apply the money they should receive to and
for the maintenance, support and benefit of his son, Joseph Parker
Norris, second, for and during the term of his natural life, in such
way and manner, however, that the same or any part thereof,
should not become subject or liable to the payment of any of his
debts, present and future, and so that no creditor should ever be
able to take, seize or enjoy the same or any part thereof."  Upon
the death of his son, his children were to take the estate devised
to him, in such proportions as he should appoint by will.  In the
exercise of this power, the son (Joseph Parker Norris, second),
devised the estate, including rents accrued but not paid to the
trustees at the time of his death, to trustees for the benefit of his
wife for life as to one-third, and for the benefit of his children as to
the residue.  In deciding the case, Judge STRONG said, in speaking
of the original will, " this was not the creation of a legal or even
of an equitable estate in the land.  It was not a devise of rents
and profits generally to the son, and therefore, in effect, a gift of
the land.  The income was committed to trustees, to be applied to
his maintenance, support and benefit, and they were to exclude his
creditors.  He owned what he could dispose of by will as owner.
And as he had not power apart from ownership over the income,
it is impossible to see how that not received, whether due and pay-
able, or only accruing at his death, can go either to his executors
or the trustees appointed by him in his attempt to execute the
power."  In Keyser *v.* Mitchell, 17 P. F. Smith 473, trustees
were authorized to collect income and pay it, or such part of it as
they should think proper, into the hands of the testator's son

[Huber's Appeal.]

Charles, or disburse it in such way as they should deem best for his comfortable support and maintenance. There was no provision protecting the income from the claims of the son's creditors. It was held that it was payable at the discretion of the trustees; that until the discretion was exercised the son had nothing; and that the money was not liable to attachment under a judgment against the son. The extent and character of a devisee's estate depend on the qualities stamped on it, and the powers conferred over it by the testator, and not alone in the parties in whom the title is formally vested. There is no difference as to the question here between a legal and an equitable estate. If both had been clothed with unlimited dominion over the income, the essential title, that is, the beneficial ownership of Joseph Parker Norris, second, in Horwitz v. Norris, and that of Jacob Gaul, under this will, would have been identical. Here, the trustees, in providing for Jacob's support, were to exercise their discretion. Only when they should pay it to him was he to have title to the income. He could not have assigned it or transmitted it by will. The administrator could receive it only on the theory that Jacob owned it. On that theory it would unquestionably be liable to the claims of his creditors, and the purpose of the testator would be wholly overthrown.

The remaining question relates to the part of the estate as to which the testator died intestate. The prayer of the petition to the Orphans' Court was for a citation against the executrix of Frederick Gaul, Jr., and the executors of William Gaul, requiring them to "file and settle the account of Frederick and William Gaul, trustees." That prayer presented the specific subject of controversy. The trusts created by the will could have no connection with the intestate property. Under the pleadings, no question in relation to that property can now be reached.

Decree affirmed and appeal dismissed at appellants' cost.

AGNEW, C. J.—I shall not dissent, but I doubt as to the income accumulated in the lifetime of Jacob Gaul. The question is one of *ownership*, which the will itself decides by the gift of the corpus directly to him for life, which distinguishes this case from those cited; while the control over the income by the trustees was merely to prevent its diversion, either by Jacob or his creditors, in his lifetime. At his death his ownership carried it into his estate for distribution.