JAMES S. REID TRUST, CENTRAL NATIONAL BANK OF CLEVELAND AND FELICE C. REID, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5132. Promulgated March 11, 1946.

*Mark A. Loofbourrow, Esq.*, for the petitioners.
*Thos. F. Callahan, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge*: This case involves income tax liability for the years 1941 and 1942, as to which deficiencies were determined by the Commissioner in the amounts of $3,536.33 and $2,119.32, respectively. The single question presented is whether or not a certain instrument provided for only one trust for three children, or three trusts, one for each child. The petitioner contends first that in fact the instrument provided for three trusts and, further, that this Court is bound by a judgment of the Court of Common Pleas of Cuyahoga County, Ohio, in which the trust instrument here involved was construed by that court and it was held that it created three trusts.

All facts have been stipulated and we find the facts set forth in the stipulation. We refer only to such portions thereof as are necessary for examination of the issue presented.

We shall consider first whether we are bound by the judgment of the Common Pleas Court in Ohio. With respect to the entry of such judgment, the facts before us show in substance only that a petition was filed in that court by the trustees, relating in substance only that they are in doubt as to their rights and duties with respect to the trust; that their conduct in holding and administering the trust assets as three separate trusts has become the subject of dispute, rendering them liable to the beneficiaries; that a controversy has arisen between them and the beneficiaries as to such duties, and between them, the trustees, "and the Treasury Department of the United States respecting the taxation of the income upon the funds held by plaintiffs under said agreement"; that therefore the court is prayed to construe the trust agreement; that a precipe for the issuance of summons against the three minor defendants, the beneficiaries named in the trust instrument, was issued; and that shortly after the petition was filed in the Court of Common Pleas, and on or about July 24, 1942, the corporate trustee, Central National Bank of Cleveland, addressed a letter to John E. Wenchel, General Counsel for the Commissioner of Internal Revenue, giving notice of the filing of the suit in the Court of Common Pleas, stating that the court's determination would necessarily involve the question of whether a single trust or multiple trusts were created by the trust indenture, and that he is given opportunity to file a pleading and appear in such court. Also, on February 18, 1943, the Court of Common Pleas entered its judgment, reciting in substance that all persons having an interest in and to the assets held by the trustees have been joined as plaintiffs or defendants, and that the court has jurisdiction; that the defendants are minors and that guardian *ad litem* has been duly appointed for them; that it appears to the court that it was the intention of the parties to the trust agreement that the defendants be treated equally under said agreement and that such equality can result only from a construction of the agreement in such a way that it is held to create three separate and distinct trusts; that it further appears to the court that the conduct of the trustees in holding the assets in three separate trusts has become the subject of dispute, so that it is necessary that the court construe the agreement; and that, therefore, it is ordered, adjudged, and decreed that the true meaning and effect of the trust instrument dated December 18, 1935, is that three separate and distinct trusts were created.

With only so much fact before us, we are unable to hold and decline to hold that the judgment of the Court of Common Pleas is binding upon us. The limited facts before us disclose that one of the objects of the proceeding was to resolve by the decision of that court a controversy "between plaintiffs and the Treasury Department of the United States respecting the taxation of the income upon the funds held by plaintiffs" under the trust agreement. The record does not

disclose whether answers were filed by the defendants, or whether any one appeared, or whether the matter was argued. It is stipulated that it was not briefed by either plaintiffs or defendants, that no appeal was taken, and the time for appeal has expired. In other words, we are not convinced, since it is affirmatively shown that one object of that proceeding was to resolve a controversy between the Treasury Department and the plaintiffs, that the proceeding was not collusive, within the meaning of that term as discussed in *Freuler* v. *Helvering*, 291 U. S. 35; that is, "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." In presenting the judgment of the Court of Common Pleas as controlling in this matter, the petitioners are logically required to show a decision free from the infirmities suggested in the quotation above; and the decision here presented to us has not only been shown not free therefrom, but affirmatively appears to involve a Federal tax question, without otherwise showing that the matter received such determination in the state court as is required before it is presented as controlling here. The absence in this record of some of the details which are recited in *Freuler* v. *Helvering*, *supra*, as evidence of a real trial—hearing in due course, all parties present, ruling against one party on one matter and in his favor on another, etc.—is indication that we are not here presented with a showing such as should be required before we receive the state court decision as controlling in the very matter which the petition before that court recited as one of its objects—controversy over Federal taxes. We therefore do not consider ourselves as bound by the decision of the Court of Common Pleas. That notice was given of the proceeding to counsel for the Bureau of Internal Revenue does not appear important.

Turning now to the consideration of the trust instrument, we set forth material parts of the trust instrument as follows:

## II

### POWERS AND DUTIES OF THE TRUSTEES

1. Until the trusts created hereunder have been discharged, the Trustees shall have title to and possession of all property coming within the terms hereof with full power and authority to retain, for such time as their discretion may dictate, the shares above described. * * * Subject to the last preceding qualification, the trustees shall manage, control, sell, convey, invest and re-invest the trust property and any part thereof in accordance with their discretion and for the benefit of the following named persons and their heirs, James Sims Reid, Jr., George McKay Reid and Margaret Crowl Reid.

\*　　\*　　\*　　\*　　\*　　\*　　\*

4. The Trustees, upon any termination of the trust estate as to any beneficiary, may make distribution in cash or in kind or partly in cash and partly in kind to the beneficiaries entitled thereto.

\*　　\*　　\*　　\*　　\*　　\*　　\*

6. (c) The Corporate Trustee hereunder, may resign this trust by giving to the co-trustee, if any, or, if none, to the beneficiaries at the time receiving income from the trust, sixty (60) days' notice in writing of its intention so to do. Such notice shall be given by registered mail addressed to the said co-trustee, if any, or, if none, to the said beneficiaries. The co-trustee, or, if there be no co-trustee, the beneficiaries at that time receiving income hereunder, shall have power to choose a successor to fill the vacancy caused by such resignation and shall notify the corporate trustee in writing of the choice so made. * * * In the selection of such successor by the beneficiaries the concurrence of a majority in interest of those receiving income shall be required.

*     *     *     *     *     *     *

(e) The corporate Trustee shall keep accurate records showing all receipts and disbursements and other transactions involving the trust estate and shall prepare and furnish to each beneficiary hereunder such information and data from the records of the trust estate as may be necessary to enable such beneficiary to make tax returns. * * *

*     *     *     *     *     *     *

(h) For the said first five year period after the date of this trust so long as there is a co-trustee qualified to act no sale, exchange or investment of the trust assets shall be made unless the same shall have been directed in writing by such co-trustee.

*     *     *     *     *     *     *

### III

#### DISTRIBUTION OF PRINCIPAL AND INCOME

The trustees shall distribute, in the manner hereinafter provided, the income and principal of the trust estate one third each to the said James Sims Reid, Jr., George McKay Reid and Margaret Crowl Reid, and upon the death of any of them the payments which thereafter would have been due to them shall be paid to their heirs, as to principal at the time when payment would have been due to the decedent if death had not intervened and as to income, at such prior times as the Trustees, in their discretion, deem proper and most beneficial to the heir. * * *

That from the income of the trust aforesaid, the Trustees may pay, upon their determination that funds therefor will not otherwise be supplied or to the extent that such funds shall be insufficient for the purpose, to the respective beneficiaries as each shall attain the age of fifteen years, or upon the first quarterly distribution date thereafter, and until such child attains the age of twenty-one years such sum, within the proportionate share of that beneficiaries [sic] interest in the current income of the trust, as may be needful to furnish maintenance and an education to such person.

Until such beneficiaries shall respectively reach the age of fifteen years the trustees shall allow the income to accumulate unless in case of emergency in which event they may use such part thereof as in their judgment is necessary for the welfare of any of said minors. After reaching the age of twenty-one years each beneficiary shall be entitled to receive the entire income on his or her share.

*     *     *     *     *     *     *

That as the above beneficiaries shall each attain the age of twenty-five years, they shall be paid one-half of their respective shares, as above, and the balance as they respectively attain the age of thirty-five years.

We have noted from a detailed examination of the trust instrument that its language, in referring to the trust, is in the singular many times, and in the plural only once, for though under the heading "POWERS AND DUTIES OF THE TRUSTEES," in the fourth paragraph of the instrument, it is recited, "Until the trusts created hereunder have been discharged, the trustees shall have title * * *," etc., thereafter throughout the instrument reference is repeatedly made to "the trust estate," "the trust," "this trust," also "the trust fund," these expressions occurring approximately 20 times. In addition, we note the recitation as to distribution of principal and income: "The trustees shall distribute, in the manner hereinafter provided, the income and principal of the trust estate *one third each* to the said James Sims Reid, Jr. [and the other two beneficiaries]"; also, that, after reaching the age of 21, each beneficiary shall be entitled to "receive the entire income on his or her share"; and again that at "the age of twenty-five years, they shall be paid one-half of their respective shares, * * *" Likewise, we notice in the provisions for distribution of trust income that until each child attains the age of 21, he may receive "such sum, within the proportionate *share* of that beneficiaries [*sic*] *interest in* the current income of the trust, as may be needful * * *." (The italics just above used are our own.)

Another expression to be noted is found with reference to the selection of a trustee, in case of a vacancy, that is, if neither trustee remains. In that instance it is provided: "In the selection of such successor by the beneficiaries the concurrence of a majority in interest of those receiving income shall be required."

In addition to the language of the trust instrument, the stipulation shows the following facts of importance on the question: For each of the years 1936, 1937, and 1938 a single fiduciary income tax return was filed by the trustees. The gift tax information return filed by the corporate trustee for 1936 refers to the trust agreement of December 18, 1935, as "an irrevocable trust." The same expression is used in the same return filed by the corporate trustee for 1937. From December 18, 1935, to December 31, 1938, the corporate trustee's record consisted of a single account, captioned, "Trust No. L2911," and no segregation of assets or income was made on the trustee bank's records until December 31, 1938, at which date three separate accounts were set up, and since that time assets and income have been segregated in the three accounts. On June 8, 1938, James S. Reid filed a written protest against allowance of exclusions of only $5,000 from gifts made by him for 1936 and 1937, stating that he was entitled to $15,000 exclusions, having made a gift to each of three children in both years. He refers to "the trust estate" set up, and does not contend for three $5,000 exclusions because of setting up three trusts. In a petition filed with the Board of Tax Appeals, involving his income tax for 1935, James

S. Reid repeatedly refers in the singular to "a trust" created by the petitioner on December 18, 1935. The brief filed for James S. Reid does the same. Three separate fiduciary income tax returns were filed for each of the years 1939 and 1940, as well as 1941 and 1942.

On all of these facts, was the trust agreement single or multiple? It does not directly or specifically, in any place, purport to be three trusts in a single instrument. The petitioners' argument (aside from reliance on the judgment of the state court) is, in brief, that it is obvious that the donor intended to treat his children alike, but that such intent can not be given effect unless there are three separate trusts, for the reason that if one child is given more than another (as it is argued would probably be the case with the oldest), then if, under the trust provisions, the accumulated income is ultimately divided three ways, the younger, not earlier the recipient of distribution, will be discriminated against in favor of preference of the child who had already received income; whereas, if three trusts are involved, each child would receive distribution only from his own trust, with no detriment to the others, thus carrying out the provision, and "basic intention" of the grantor, in the instrument that income and principal be distributed "one third each."

After careful examination of the trust instrument and the history of the matter as abbreviated above, we are of the opinion that the petitioners' view should not be sustained. It expresses perhaps what the donor should have done, to be meticulously impartial among his children, rather than what he actually did, which is, of course, the point of examination here. The argument may not be allowed to prevail against the oft-repeated references to the trust as an integer, not a multiple of three trusts, and against the fact that until December 31, 1938, the corporate trustee treated the matter as one trust, both on its books and in filing returns. The idea of three trusts appears quite clearly as an afterthought, rather than an intention expressed in the trust instrument, which intention is, of course, the criterion by which we must decide. *United States Trust Co. of New York* v. *Commissioner*, 296 U. S. 481. Though once in such instrument "trusts" are mentioned, some 20 references to the trust in the singular can not but greatly tend to outweigh the single opposing expression. Moreover, other expressions add counterweight to meet petitioners' view. The words "share," and "shares," are consistent only with the idea of a whole—an integrated trust—and to the same effect is the fact that in selection of a successor trustee by the beneficiaries "the concurrence of a majority in interest of those receiving income shall be required." In our view, this indicates a conjunction of the interests of the three children, and negatives the idea of separate trusts. In that case, only the beneficiary of the particular trust would logically be interested in or entitled to select a successor trustee. The language, "within

the *proportionate* share of that *beneficiaries* [*sic*] *interest* in the current income of the trust," (italics supplied) can, we think, indicate nothing but intent that the trust is to be single. It also tends to defeat the petitioners' argument that, unless there are three trusts, injustice is done, for the language just quoted is part of a provision in effect that between the age of 15 and 21 income may in any event be expended, if needful to maintain and educate a child, only within his proportionate share of current income, minimizing the likelihood of inequity between the children. Moreover, we think that the argument based on the idea of unequal treatment does not prevail to demonstrate the donor's intent, for the discretion was given to the trustees as to distribution to, or use of, income for the children, and it is just as reasonable to think that the donor's idea was that such discretion would level out any inequalities in treatment of the children, as to think that he considered himself to be setting up three trusts. Indeed, on reply brief, the petitioners point out that the oldest child could have no assurance that such discretion "might not diminish his trust to the benefit of the other children"—though earlier the fear has been expressed that the older child might, by earlier distributions, be in effect preferred.

There was only one trust instrument. Its language is convincing that only one trust was contemplated. Simple language could have effected division, had that been desired. We think it was not, until later. The cases cited by the parties are of no great assistance, various differences in fact appearing. We hold that only one trust was created.

*Decision will be entered for the respondent.*