WILLIAM L. MELLON, JR. AND MELLON NATIONAL BANK AND TRUST COMPANY (SUCCESSOR BY MERGER AND CONSOLIDATION TO THE UNION TRUST COMPANY OF PITTSBURGH), TRUSTEES UNDER DEED OF TRUST OF WILLIAM L. MELLON DATED NOVEMBER 17, 1941, FOR WILLIAM L. MELLON, JR. AND OTHERS, PETITIONER, ET AL.[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13813, 15145, 15146, 15147. Promulgated August 5, 1948.

[1] Proceedings of the following petitioners are consolidated herewith: Matthew T. Mellon and Mellon National Bank and Trust Co. (Successor by Merger and Consolidation to the Union Trust Company of Pittsburgh), Trustees under Deed of Trust of William L. Mellon Dated November 17, 1941, for Matthew T. Mellon and Others; John F. Walton, Jr. and Mellon National Bank and Trust Company (Successor by Merger and Consolidation to the Union Trust Company of Pittsburgh), Trustees under Deed of Trust of William L. Mellon Dated November 17, 1941, for Rachel Mellon Walton and Others; and Mellon National Bank and Trust Company (Successor by Merger and Consolidation to the Union Trust Company of Pittsburgh), Surviving Trustee under Deed of Trust of William L. Mellon Dated November 17, 1941, for Margaret Mellon Hitchcock and Others.

*William F. Knox, Esq.,* for the petitioners.
*Hobby H. McCall, Esq.,* for the respondent.

### OPINION.

DISNEY, *Judge*: Each of the proceedings herein involves deficiencies of $474.83 and $280.25 in income tax for the taxable period January 1, 1942, to November 30, 1942, and for the fiscal year ended November 30, 1943, respectively. The common issue is whether income for each taxable period in excess of the amount distributed to the primary beneficiary is deductible from the gross income of the trust. Except for income tax returns, all of the facts are embodied in stipulations of the parties, which are incorporated herein by reference as findings of fact. The parties being in agreement upon the applicability of the facts in the trust involved in Docket No. 13813 to the other proceedings, our statement of the facts will be confined to those involved in that proceeding.

The petitioners are the trustees under four trusts created by William L. Mellon on November 17, 1941, one for each of his four children, that is, for William L. Mellon, Jr., and three other children, all as primary beneficiaries; also for other beneficiaries. Their returns were made on the cash basis and filed with the collector at Pittsburgh, Pennsylvania.

The settlor irrevocably transferred in trust in each case 10,000 shares of the capital stock of Gulf Oil Corporation, with directions to collect the income thereon during the lives of William L. Mellon, Jr., and the three other children of the settlor, and, after paying administrative expenses, to distribute the net income and principal of the trust as provided for therein.

Section 2 of article one of the trust deed provided for the payment to the primary beneficiary as an annuity out of the income of the trust, and principal, if needed, the amount of $10,000 each year during his lifetime.

Section 3 of article one provided that any income from the trust

estate in excess of the annuity should be divided annually into as many equal shares as there were grandchildren of the settlor then living and grandchildren then deceased leaving lawful issue then living, and, subject to the provisions of article two, that one of the shares should be paid to each grandchild then living and the lawful issue then living of any grandchild then deceased, the issue of deceased grandchildren to take *per stirpes*. In the event that at any time before the expiration of the trust there were no grandchildren of the settlor or their issue to take the excess income, until the birth of another grandchild, the excess was to be paid equally among those of settlor's children then living.

Section 4 of article one made like provision for payments to grandchildren, and issue of deceased grandchildren, of the net income of the estate from the death of the primary beneficiary to the termination of the trust, the beneficiaries entitled to take to be determined at the time of receipt of the income and the payments to be subject to the provisions of article two of the trust. There was to be a like division and distribution among grandchildren and lawful issue of deceased grandchildren of the corpus of the estate, subject to article three of the trust, upon the termination of the trust at the time of death of the last survivor of the settlor's four children, with remainders over in case there were no grandchildren or issue of deceased grandchildren to take.

Article two of the trust deed provided that any income payable to any grandchild or issue of a deceased grandchild under the age of twenty-one years might be paid by the trustees to the guardian of the beneficiary in such amounts as the guardian might deem necessary for the maintenance, education, and support of the ward, or the trustee in his discretion might apply the income for such purposes. It also provided that "Any unexpended income shall be retained and invested by the Trustees until such minor shall arrive at the age of twenty-one, when the accumulations of income on his or her share of income shall be paid to such minor."

Article three provided that if, upon the termination of the trust, any beneficiary entitled to a share should be a minor, the trustee "shall continue to hold the share of such minor in a separate trust fund," and thereafter pay from the income therefrom amounts for the maintenance, education, and support of the minor as deemed necessary by the guardian or applied for that purpose by the trustee, any excess income to be retained and invested by the trustee until the minor reaches the age of twenty-one, when the unexpended income and accumulations thereon should be distributed to him or her. The same article provided that if any such minor died before reaching the age of twenty-one, his or her share of the trust estate and accumulations of income thereon should be delivered to such persons, exclusive of the settlor, as would

be entitled thereto under the intestacy laws of Pennsylvania, if the minor at the time of his or her death had been legally seized of the property in his or her own right.

During 1941, the petitioners received $7,500 from the trust property, on which they paid income tax of $1,094 in 1942. In March, June, and September 1942 the trustees received income totaling $10,000. During the taxable period ended November 30, 1942, a total of $10,000 was distributed to the primary beneficiary, of which $2,500 was paid out of the income received in 1941.

On November 17, 1942, the end of the first year of the trust, the beneficiaries under the deed of trust consisted of twelve living grandchildren of the settlor and the settlor's son. The oldest of the grandchildren was born January 20, 1923. On November 17, 1942, the income from the property in trust in excess of the $10,000 payable to the primary beneficiary was $6,406, of which $3,906 was received in 1941 and the remainder, $2,500, in 1942. On December 14, 1942, the $6,406 (less $525 for trustees' commissions), then designated on the records of the corporate trustee as income of trust No. B–830, was divided into twelve shares, one for each grandchild, and transferred from trust No. B–830 to separate subsidiary accounts set up by the corporate trustee, one for each grandchild, to each of which was assigned a separate trust number.

In their fiduciary return for trust No. B–830 for the taxable period ended November 30, 1942, the trustees reported income of $10,000, distributable $7,500 to the primary beneficiary and the remainder of $2,500 in equal amounts to the twelve subsidiary accounts. All of the amounts shown in the return as distributable to beneficiaries were deducted in the return, leaving no income taxable to trust No. B–830. The corporate trustee filed fiduciary income tax returns for each of the twelve subsidiary accounts, in which it reported the amount transferred to the account and paid the tax computed thereon. In his determination of the deficiency for the period ended November 30, 1942, respondent allowed petitioners no deductions from trust No. B–830 for the $2,500 of excess income transferred to the twelve subsidiary accounts, upon the ground that it did not constitute a deduction under the provisions of section 162 (b) and (c) of the Internal Revenue Code.

Income received by the trustees during the year ended November 17, 1943, was distributed, transferred to subsidiary accounts for the minor beneficiaries, and reported for taxation in the same manner as in the prior taxable year, except that the share of the grandchild who became twenty-one years of age on January 12, 1944, was distributed to her on March 1, 1944. The balance in her account No. B–830A, consisting of $10.86 in cash and U. S. savings bonds of a

book value of $444, was distributed to her in February and April 1944, the cash in the former month. Like action was taken by the respondent with respect to the deductions from income of trust No. B–830 for the shares of the grandchildren.

During the taxable years the petitioners did not pay to any guardian or themselves apply any excess income for the maintenance, education, or support of any of the grandchildren.

Article four of the trust deed provided that corpus and income of the trust was not liable for any contracts, debts, engagements, or torts of the beneficiaries and that the beneficiaries were without power to sell, assign, or encumber any part of the corpus or their interest therein on the income therefrom or to anticipate the income.

The trust deed provided that the instrument should be interpreted in accordance with the laws of Pennsylvania.

There is no controversy over the amounts distributed to the primary beneficiary of each trust. The issue is whether the amounts in excess thereof, which petitioners transferred to accounts set up for the other beneficiaries, who were minor grandchildren of the settlor, constitute deductions in computing net income of the respective trusts. The parties are in agreement that the issue turns upon whether the trust deed created a main trust and twelve subsidiary trusts, one for each living grandchild of the settlor, as contended by the petitioner, or a single trust with many beneficiaries, as contended by the respondent.

Whether the trust deed created one or a multiple of trusts depends, under the facts in this case, upon the intent of the settlor as expressed in the instrument itself, which is the only evidence in the record of his intention. *Huntington National Bank* v. *Commissioner*, 90 Fed. (2d) 876, affirming 32 B. T. A. 342; *McGinley* v. *Commissioner*, 80 Fed. (2d) 692; *Lynchburg Trust & Savings Bank* v. *Commissioner*, 68 Fed. (2d) 356. Throughout the trust deed the singular form was used a great many times, and without exception, in referring to the trust. The employment of such language by the settlor is an important factor in determining his intention, and requires clear proof of intention to create more than one trust. *Huntington National Bank, supra; Gertrude McGinley, Trustee*, 31 B. T. A. 81; *Garrard E. Kelly Trust #2*, 8 T. C. 1269; reversed on other grounds, 168 Fed. (2d) 198.

Reference by the settlor to other trusts was limited to the provisions in section 1 of article three of the instrument for holding in a separate trust fund after the termination of the trust, upon the death of the last survivor of the settlor's children, the share of any minor beneficiary. Such a provision would not have been necessary if, as petitioners contend, a trust was already in existence for each of such beneficiaries.

In *Willcuts* v. *Ordway*, 19 Fed. (2d) 917, the court said that the term "distribution" means "separation and segregation from the trust estate so that it no longer forms any part or parcel thereof." The court also said that "the test set up by the statute is whether the income passes from the trust estate which produced it and ceases to be subject to the terms and control of *that trust.*"

The language used in the trust deed is similar to that generally found in instruments creating a single trust with several or more beneficiaries and provision for accumulating a portion of the income of beneficiaries for distribution in the future. Here amounts of current income not used for the maintenance, education, and support of any minor beneficiaries were to be "retained and invested" by the trustees until he or she reached twenty-one years of age, when the accumulations were to be paid to such minor. The amounts so accumulated constitute the deductions involved herein.

The minor beneficiaries had equal interests and nothing was paid out during the taxable years for their maintenance, education, and support. Except for U. S. Savings bonds in account No. B–830A, the record does not disclose how the accumulations of income were invested. Under the circumstances, it does not appear that administration of the trust involved, or would involve, any valuation problems, or accounting difficulties, that could not have been or be handled as one trust as well as a multiple of trusts. In that respect, the situation here differs from the *Lynchburg* case, *supra*, on which petitioners chiefly rely.

The effect of the decisions in the *Lynchburg* case, *supra*, and the *Willcuts* case, *supra*, also relied upon by petitioners, is that the beneficiaries therein had present vested interests in the accumulations of income. *Urquhart* v. *Commissioner*, 125 Fed. (2d) 701. We find no such interests here.

The shares of minors in current income could be used for their maintenance, education, and support, but no provision was made for such use, or any other use of accumulations of income for the benefit of the minors. In the *Lynchburg* case the accumulations were available to improve property of the beneficiary, which fact the court regarded as recognition of the creation of multiple trusts.

Here no provision was made in the trust deed for disposition of accumulated income in the event a minor died before reaching twenty-one years of age and during the life of the trust. In *Ross' Estate*, 18 Pa. Dist. Rept. 831, income of a testamentary trust was to be applied for the support of a beneficiary for life, with remainder over. Upon the death of the life beneficiary, the trustee held unexpended income, which income the court held was "* * * unsevered from the fund

which created it, and it passed with the principal to the remainderman." The court held to the same effect in *Huber's Appeal*, 80 Pa. 348. In each case the court pointed out that the accumulations were not subject to claims of creditors of the beneficiary and that the beneficiary could not assign the income. The instrument here was a spendthrift trust and the beneficiaries were without power to assign or encumber principal or income or anticipate the income.

We find nothing in the instrument to disclose intent of the settlor that accumulated income of beneficiaries who died before becoming entitled to a distribution thereof should pass to their personal representatives. The chief purpose of the trust was to pay the annuity to the settlor's son. During his lifetime the excess was, in general, to be for the equal benefit of grandchildren, and, after his death, all of the income was to go to them. Upon the termination of the trust the corpus thereof was to be distributed, in equal shares, to or for the benefit of grandchildren and issue of deceased grandchildren, the latter to take *per stirpes*. Thus, the general purpose was equal division of income and corpus among grandchildren and issue of any deceased grandchildren.

In the *Lynchburg* case, express provision was made for disposition of income and corpus in the event of death of a beneficiary, with or without descendants.

The case of *George G. Allen et al., Trustees*, 40 B. T. A. 351, is distinguishable. There the accumulations were available for the benefit of the beneficiary, and, if he died before reaching twenty-one years of age, the trust was to go to his heirs, and, if none, to another trust.

We conclude that the settlor intended only one trust in each case. Accordingly,

*Decisions will be entered for the respondent.*