THE LINCOLN ELECTRIC COMPANY EMPLOYEES' PROFIT-SHARING TRUST, THE CLEVELAND TRUST COMPANY, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19262.  Promulgated April 17, 1950.

---

[4] See sec. 403 (a) (4) (A).

*Thomas V. Koykka, Esq.*, for the petitioner.
*William R. Bagby, Esq.*, for the respondent.

600

OPINION.

BLACK, *Judge*: The principal question for decision herein is whether the Lincoln Electric Company Employees' Profit-Sharing Trust was an exempt trust within the meaning of section 165 (a) of the Internal Revenue Code.[1]   Section 165 (a) requires that the trust, in order to be exempt, must be for the purpose of "forming part of a stock bonus, pension, or profit-sharing plan."

---

[1] SEC. 165. EMPLOYEES' TRUSTS.  [As amended by sec. 218, Revenue Act of 1939; sec. 162 (a), Revenue Act of 1942.]

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan ;

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for,

Petitioner contends that the trust complies with the requirements of section 165 (a). It argues that it was the intent of Congress to include as a "plan" within the meaning of section 165 (a) every type of arrangement under which receipt by the employee of the sum paid is deferred. Respondent, on the other hand, contends, for the reasons stated in his letter to petitioner of May 25, 1945, that the trust was not exempt, as it was not part of a true "profit-sharing plan" within the meaning of the statute.

It will be noted that the statute in question deals with "A trust forming part of a stock bonus, pension, or profit-sharing plan." It is clear that the employees' trust here involved is not part of any stock bonus plan, nor is it a part of any pension plan. Petitioner does not so contend, but it does contend that the purpose of the trust was to carry out a profit-sharing plan of the Lincoln Electric Co. with the greater part of its employees, which constituted considerably more than 70 per cent thereof, and that therefore it is exempt under section 165 (a). We agree with petitioner that the evidence shows that the purpose of the creation of the trust was to provide for the ultimate disposition without discrimination of $1,000,000 of its 1941 profits to 890 of its employees, or, in case of their death, to certain beneficiaries of these employees. The question is whether such plan is one which comes within the exemption provisions of section 165 (a).

In *Lincoln Electric Co.*, 6 T. C. 37, one of the issues which we had before us was whether in the year 1941 the company was entitled to deduct the sum of $1,000,000 paid to the Cleveland Trust Co., as trustee, under a trust for the benefit of certain employees, either as additional compensation for services actually rendered or as ordinary and necessary business expenses. The $1,000,000 there involved made up the corpus of the trust which we now have before us. We held in *Lincoln Electric Co.*, *supra*, that the $1,000,000 was not deductible by

---

or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans · are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

    (A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five months in any calendar year, or

    (B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

     *       *       *       * .       *       *       *

the taxpayer as an ordinary and necessary business expense under the provisions of section 23 (a) (1) (A). The taxpayer in that case made no claim that the $1,000,000 contributed to the trust was deductible under the provisions of section 23 (p) of the code dealing with pension trusts. The year there involved was the year 1941, which was prior to the amendments included in the 1942 Act which are here applicable. The Sixth Circuit reversed our decision in the *Lincoln Electric Co.* case, *supra*, and held that the $1,000,000 in question was an ordinary and necessary business expense. See *Lincoln Electric Co.* v. *Commissioner*, 162 Fed. (2d) 379. But the Lincoln Electric Company Employees' Profit-Sharing Trust, the petitioner in the instant case, was not before us in *Lincoln Electric Co.*, and neither in our decision nor in the decision of the Sixth Circuit was its exempt status as a taxpayer under section 165 (a) ruled upon. Therefore, we do not consider our own decision or the decision of the Sixth Circuit in the *Lincoln Electric Co.* case as having any controlling effect upon the issue which we have here to decide.

A taxpayer claiming exemption must bring himself within the precise terms of the statutory provision granting the exemption. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Deputy* v. *Du Pont*, 308 U. S. 488. The question before us is an interpretation of the expression "profit-sharing plan." Section 165 (a) does not define the meaning of "profit-sharing plan." However, Regulations 111, section 29.165-1, states, in part, as follows:

SEC. 29.165-1. EMPLOYEES' TRUSTS.—(a) *In General.*—In order that a trust may be exempt under section 165 (a) it must be part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries. The trust must be formed and availed of solely to aid in the proper execution of a plan which is a definite written program and arrangement communicated to the employees, solely designed and applied to enable such employees or their beneficiaries to share in the capital or profits of such employer's trade or business or to provide for the livelihood of such employees or their beneficiaries after the retirement of such employees.

* * * A profit-sharing plan, on the one hand, is a plan established and maintained by an employer to provide for the participation in his profits, by his employees or their beneficiaries, based on a definite predetermined formula for determining the profits to be shared and a definite predetermined formula for distributing the funds accumulated under the plan after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as illness, disability, retirement, death or severance of employment. * * *

The term "plan" implies a permanent as distinguished from a temporary program. While the employer may reserve the right to change or terminate the plan, and to *discontinue contributions* thereunder, if the plan is abandoned for any cause other than business necessity within a few years after it has taken effect, this will be evidence that the plan from its inception was not a bona fide program for the exclusive benefit of employees in general. * * * The permanency of the plan will be indicated by all of the surrounding facts and circum-

stances, including the likelihood of the employer's ability to *continue contributions* as provided under the plan. \* \* \* [Emphasis supplied.]

This regulation constitutes a contemporaneous construction of the act by those charged with its administration and for that reason is entitled to consideration and will not be overruled unless inconsistent with the law and inappropriate to accomplish the purpose of Congress. See *Brewster* v. *Gage*, 280 U. S. 327; *Fawcus Machine Co.* v. *United States*, 282 U. S. 375; *Augustus* v. *Commissioner*, 118 Fed. (2d) 38; certiorari denied, 313 U. S. 585. In *Augustus* v. *Commissioner*, the court said:

\* \* \* The first administrative interpretation of a provision as it appears in a new act often expresses the general understanding of the times or the actual understanding of those who played an important part when the statute was drafted.

So far as we can see, the above regulation is reasonable and a fair interpretation of the expression "profit-sharing plan."

Was the employees' profit-sharing trust herein a "profit-sharing plan" within the meaning of the statute and regulations? The record discloses that in December, 1941, the company established a trust for the benefit of 890 of its employees and paid $1,000,000 to the Cleveland Trust Co., as trustee. The creation of the profit-sharing plan and the payment of the $1,000,000 to the trustee were pursuant to a resolution of the company's board of directors duly adopted December 18, 1941. The payment of the $1,000,000 was not made in accordance with any predetermined formula for the determination of profits to be shared. See I. T. 3661, 1944 C. B. 315.[2] It was a lump sum payment, with no provision for recurrent contributions to the trust. We do not think that under the circumstances herein the trust formed part of a "profit-sharing plan" within the intent and purview of section 165 (a) as interpreted by the applicable Treasury regulations.

---

[2] Section 165 (a) of the Internal Revenue Code, as amended by section 162 (a) of the Revenue Act of 1942, provides, among other things, for exemption of a trust forming part of a profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries. As used in that section, such a plan means a definite written program and arrangement, communicated to the employees, solely designed and applied to enable such employees or their beneficiaries to share in the profits of such employer's trade or business. (See section 29.165-1 of Regulations 111.)

In order that a profit-sharing program may qualify as a profit-sharing plan under section 165 (a) of the Internal Revenue Code, it must be a definite written program. It must, therefore, set forth a definite formula for determining the profits of the employer to be shared and for distributing such profits among his employees or their beneficiaries. For example, a formula which provides for a contribution equal to (a) a specified percentage of the annual profits, or (b) a specified percentage of the annual profits in excess of the sum of dividend commitments plus a fixed amount, is definite as to the determination of the profits to be shared. Also a formula which provides for distributing such profits in proportion to basic compensation is definite in regard to distribution.

It is, accordingly, held that a profit-sharing program will not qualify as a profit-sharing plan under section 165 (a) of the Internal Revenue Code unless it sets forth (a) a definite formula for determining the profits of the employer to be shared and (b) a definite formula for distributing such profits to his employees or their beneficiaries.

In our findings of fact we set out a ruling by the Commissioner dated May 25, 1945, in which the Commissioner stated in some detail why the trust was not exempt from taxation under section 165 (a) of the code for the years 1941, 1942, and 1943. His reasons as to why he considered the trust was not exempt were stated in five separate paragraphs, which were numbered (a), (b), (c), (d), and (e). The Commissioner in his letter stated that the trust for the year 1943 does not meet the requirements of the Internal Revenue Code, as amended, for 1943, for the reasons designated in all of the paragraphs of his letter. If the Commissioner was correct as to 1943, he would also be correct as to the year 1944, the year which we have before us. No change in the law or regulations has been called to our attention as having taken place between 1943 and 1944. In sustaining respondent's determination that petitioner is not exempt under section 165 (a) for the year 1944, we are doing so on the strength of our belief that petitioner does not meet the requirements of that part of Treasury Regulations 111, section 29.165–1, quoted above, and our holding that such regulations are a valid interpretation of the law. These requirements are summarized in paragraphs (a) and (b) of the Commissioner's letter heretofore referred to. Petitioner strongly takes issue with the Commissioner in his interpretation of the statute as evidenced by the regulations above referred to and says in its brief:

When the statute speaks of a "plan," the Commissioner takes this to mean a "plan" confined to the making of recurrent and systematic payments into a trust for employees. And from this erroneous premise the Commissioner concludes that, since the present indenture provides for but a single contribution, it does not satisfy the statute.

But Congress did not so limit the statute.

A reading of section 165 (a), together with section 23 (p) with which it must be integrated, shows that the whole subject is a difficult one and much must be left to interpretative Treasury regulations. We, therefore, do not feel justified in disapproving that part of the regulations printed above. In saying this, however, we do not wish to be understood as approving the reasons given by the Commissioner in paragraphs (c), (d), and (e) of his letter. The Commissioner in his brief argues for the validity of his objections stated in all three of these latter paragraphs. But we do not go so far. Having sustained the Commissioner under the part of Treasury regulations above referred to, it becomes unnecessary to rule upon the objections to the trust which the Commissioner stated in paragraphs (c), (d), and (e) of his letter and which he still presses in his brief.

The Commissioner in his brief, in addition to his reliance upon Treasury Regulations 111, section 29.165–1, relies upon *Harold G. Perkins*, 8 T. C. 1051, and *South Texas Commercial National Bank*

*of Houston*, 7 T. C. 764; affd., 162 Fed. (2d) 462. These cases, however, are so different in their facts from the instant case that we do not think they are helpful here and, therefore, we do not discuss them.

Petitioner contends, in the alternative, that if the trust does not qualify as an exempt trust under section 165 (a), then the trust indenture created not one, but a separate trust for each one of the 890 beneficiaries named. It was stipulated that if the trust indenture created a separate trust for each of the 890 employees named as a beneficiary under the trust indenture, there would be no deficiency in tax. Respondent, contends, however, that it was the intent of the grantor to create a single trust and the income of all the property is taxable to one trust.

In determining whether the trust indenture created a single trust or multiple trusts, the controlling factor is the intention of the grantor, which must be determined from the entire trust instrument. *Huntington National Bank* v. *Commissioner*, 90 Fed. (2d) 876, affirming 32 B. T. A. 342; *McGinley* v. *Commissioner*, 80 Fed. (2d) 692; *Lynchburg Trust & Savings Bank* v. *Commissioner*, 68 Fed. (2d) 356; *William L. Mellon Trusts*, 11 T. C. 135; affd., 174 Fed. (2d) 828. We think that an examination of the trust instrument indicates an intention to create a single trust. Throughout the trust indenture the grantor consistently and many times uses the singular form in referring to the trust and the trust estate. In *William L. Mellon Trusts, supra,* we pointed out that: "The employment of such language by the settlor is an important factor in determining his intention, and requires clear proof of intention to create more than one trust." Also the grantor has used the plural in referring to the beneficiaries who are to share the trust estate. For instance, paragraph No. 9 of the agreement provides that the trust estate shall be held for the benefit of the "Beneficiaries in the proportions indicated by the fractions set opposite their respective names."

In our opinion the trust instrument in its entirety and particularly the references to the trust in the singular and the references to the beneficiaries in the plural show a clear expression of intent of the grantor to establish a single trust. The language of the trust instrument indicates a conjunction of the interests of the 890 beneficiaries in a single trust estate, the fractional parts of which in accordance with the terms of the trust are to be later distributed among the beneficiaries, and such language negatives any intent to create separate trusts. We hold, therefore, that the trust is taxable as a single entity. Cf. *William L. Mellon Trusts, supra; James S. Reid Trust*, 6 T. C. 438; *Marian Neal, etc. Trust*, 40 B. T. A. 1033.

Reviewed by the Court.

*Decision will be entered for the respondent.*

DISNEY, *J.*, dissenting: Cognizant fully of the necessity for regulations on a complicated subject, nevertheless I am not able to agree that the regulation involved here is not an unwarranted addition to the statute. Paraphrased, and as far as here concerned, the statute provides exemption for a trust which forms part of a profit-sharing plan if contributions are made thereto by the employer and the employer can not divert such contributions away from the exclusive benefit of employees or their beneficiaries. The regulation, however, as reflected in the respondent's contention, adds, in substance, that the plan must be permanent and for a definite program. The Commissioner says that this plan is not permanent because it involves a single contribution with disposition at the end of ten years, and there is no definite program because there is no definite formula for determining profits. I find no such requirements in the statute. It does not say permanent plan, but merely "plan," and it says nothing about program or definite formula for determining profits. Indeed, the profits are determined here—determined at $1,000,000, the amount contributed. It seems to me that the word "plan," under the ordinary canon of statutory construction that language shall be used in its ordinary sense, plainly includes what the employer here did. To say that there was no plan involved in this affair seems unrealistic. The Commissioner's power to promulgate regulations appears improperly exercised when it narrows the general expression "plan" by requiring that it entail certain things, such as permanency and definite formula. Such regulation might be used to modify, narrow, and curtail almost any expression used by Congress, merely because it is subject to definition. Such restriction is not, in my view, a permissible function of regulation. The petitioner's profits were shared with its employees and their beneficiaries, beyond recall. I would not distinguish between this petitioner and one which made its contribution over several years instead of a single contribution to be utilized over ten years, as here, or one which had a more definite program for determining all profits to be shared. They were here determined by the contribution. Having made an irrevocable contribution for its employees, certainly with a plan, because ultimate segregation and disposition were to be at the end of ten years, petitioner should not, in my opinion, be denied the statutory exemption. I, therefore, respectfully dissent.

ARUNDELL and VAN FOSSAN, *JJ.*, agree with this dissent.