SHERWOOD SWAN AND COMPANY, LTD., EMPLOYEES' BENEFIT FUND, OAKLAND BANK OF COMMERCE, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4677–62. Filed April 30, 1964.

*James F. Crafts, Jr.,* for the petitioner.
*John O. Hargrove,* for the respondent.

WITHEY, *Judge:* Deficiencies in the income tax of petitioner for the fiscal years ended March 31, 1959, 1960, and 1961, in the respective amounts of $1,084.28, $1,355.62, and $1,114.87 have been determined by the Commissioner.

The sole issue for decision is whether, during such fiscal years, petitioner was a qualified profit-sharing trust under section 401(a), I.R.C. 1954.

### FINDINGS OF FACT

All of the facts of record have been agreed upon and are found as stipulated.

Sherwood Swan & Co., hereinafter referred to as the company, is a California corporation which carried on a grocery and department store business in Oakland, Calif., at all times material hereto.

Sherwood Swan has been president of the company since its organization in 1924. He has been controlling stockholder of the company at all times material hereto. At least since 1952, Swan and members of his immediate family have owned all of the common stock of the company. At all times material hereto, he has also been a member of the company's board of directors.

On January 31, 1943, the company and Frank G. Short entered into a declaration of trust agreement, hereinafter referred to as the agreement, which provided for the creation of a trust called "Sherwood Swan and Company, Ltd., Employees' Benefit Fund." The trust is the petitioner in the instant case. On July 6, 1953, the Oakland Bank

of Commerce, a California corporation, succeeded Frank G. Short as trustee of petitioner, and the bank is presently the trustee.

The petitioner's fiscal year ends on March 31, while the company's fiscal year ends January 31. Hereinafter, fiscal years are usually referred to by the year only.

The agreement, as amended, was ruled entitled to exemption by the Commissioner in his letter dated January 6, 1945. The ruling was issued on the basis of the provisions of the agreement and information contained in a proof of exemption submitted to the Internal Revenue Service by petitioner's representatives.

The agreement, as approved by the Commissioner, provided that the company would make contributions to the trust for its fiscal years ending after January 31, 1945, if the income of the company after all charges, including reserves for taxes, was in excess of 10 percent of the combined capital and surplus of the company. If the company's income exceeded such amount, it would make contributions in an amount equal to one-third of all additional net income of the company, except in no event would the total amount contributed exceed 15 percent of the total compensation otherwise paid or payable by the company to the beneficiaries under the trust for such year.

All persons in the employ of the company on the last day of each fiscal year of the company for which the company made a contribution to the trust and who on such date had been continuously in the employ of the company for a period of 2 years prior thereto (or would have been but for leave of absence for service in the U.S. Armed Forces) were eligible to receive benefits under the plan. Contributions made by the company were credited to the accounts of eligible employees in proportion to the compensation otherwise paid to them by the company.

Beneficiaries' rights to corpus of the trust (i.e., company contributions) vested at the rate of 10 percent for each year of service after the contribution was made so that a beneficiary's rights to corpus were fully vested after 10 years of service after the most recent contribution.

A beneficiary's right to income of the trust vests at age 60, or upon his death, or incapacity prior to reaching age 60. In the event that employment is terminated for reasons other than those set forth in the preceding sentence prior to age 60, such beneficiary's income benefits are apportioned among other remaining beneficiaries at the close of the plan's fiscal year on the same basis used in allocating contributions among beneficiaries.

The most recent company contribution to the trust was made for the fiscal year of the company ended January 31, 1947. Accordingly, all persons who were beneficiaries of the plan during the years here in question have fully vested rights with respect to corpus.

Contributions have not been made since the fiscal year ended January 31, 1947, because the company's income has been less than the minimum amount specified in the plan during all intervening years.

There were 11 active employees who were beneficiaries of the trust on March 31, 1959, and 7 active employees who were beneficiaries on March 31, 1960, and on March 31, 1961. Sherwood Swan, who is president of the company and who, together with members of his family, owns all of the common stock of the company, was credited with more than 50 percent of the total corpus and income credited to the seven active employees who were beneficiaries of the trust on March 31, 1961.

During the company's fiscal year 1943, and as represented to the Internal Revenue Service on the proof of exemption, all of the company's employees received compensation in the total amount of $322,830.99. In 1943, all of the employees covered by the plan received compensation in the total amount of $160,188.34. During the same year, Swan received compensation in the amount of $10,000. Swan's share of the employer's contribution in 1943, allocated in proportion to his compensation, was 6.2 percent of the total contribution.

At the end of petitioner's fiscal years 1959, 1960, and 1961, the amounts of petitioner's assets contained in the profit-sharing trust account of Sherwood Swan were as follows:

| Fiscal year | Trust account balance of Sherwood Swan [1] | Sherwood Swan's percentage of total beneficiaries' equities [1] |
|---|---|---|
| 1959 | $62,546.14 | 45.65 |
| 1960 | 66,314.87 | 54.92 |
| 1961 | 69,662.04 | 54.91 |

[1] Not including unrealized appreciation.

During petitioner's fiscal years 1959, 1960, and 1961, three of the company's employees who were members of the "prohibited class," as defined by the Code, were Sherwood Swan, president, operating manager, and controlling stockholder; Florence (McDonough) Downs, manager and buyer for women's lingerie, etc.; and Elia Milisich, manager and buyer for liquor and tobacco, etc. The amounts of peti-

tioner's assets contained in the profit-sharing trust accounts of these three employees during the above years were as follows:

| Fiscal year | Trust account balances of prohibited class [1] | Prohibited class's percentage of total beneficiaries' equities [1] |
|---|---|---|
| 1959 | $84,185.40 | 61.44 |
| 1960 | 89,001.16 | 73.71 |
| 1961 | 93,278.25 | 73.52 |

[1] Not including unrealized appreciation.

The income portion of Sherwood Swan's trust account became vested in 1947, the company's last contribution year. Swan's share of accumulated income was $60,979.97 on March 31, 1961.

In the petitioner's fiscal year 1959, W. L. Fowler was severed from employment by the company prior to his reaching 60. He thus forfeited accumulated income in the amount of $23,605.95. Of this amount, $10,720.31 was allocated to Sherwood Swan.

In petitioner's fiscal year 1943, Swan was allocated 6.2 percent of the employer contribution. On March 31, 1961, Swan's trust account contained 54.91 percent of total beneficiaries' equities in trust assets valued at cost.

Trust assets have been valued at cost at all times. Income and appreciation of trust assets realized on the sale of trust assets have been credited as income to participating employees' accounts annually in proportion to their account balances as of the beginning of the fiscal year.

Appreciation not realized by the sale of trust assets has never been allocated to participating employees' accounts. The amounts of unrealized appreciation on preferred and common stocks in petitioner was $53,986 on March 31, 1963.

The agreement provides that the appreciation shall be divided among the remaining beneficiaries on the termination of the trust, in proportion to their account balances on March 31 preceding the date of termination. The trust shall terminate when only three beneficiaries remain.

As of March 31, 1963, only six beneficiaries remained.

### ULTIMATE FINDINGS

The company's failure to contribute to petitioner during its fiscal years subsequent to 1947 is attributable solely to its lack of profits for those years within the clear provisions of its profit-sharing plan.

In the operation of the plan there has been no discrimination in favor of employees of the company who are officers, shareholders, supervisory employees, or highly compensated employees.

### OPINION

There is no dispute here but that petitioner is and has been from its inception a valid and subsisting profit-sharing trust. The issue between the parties is whether, during the years at issue, it was qualified as such within the meaning of section 401(a) of the 1954 Code [1] and exempt from imposition of income tax under section 501(a) of

---

[1] SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

(1) if contributions are made to the trust by such employer, or employees, or both, or by another employer who is entitled to deduct his contributions under section 404(a)(3)(B) (relating to deduction for contributions to profit-sharing and stock bonus plans), for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan;

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

(5) A classification shall not be considered discriminatory within the meaning of paragraph (3)(B) or (4) merely because it excludes employees the whole of whose remuneration constitutes "wages" under section 3121(a)(1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from "wages" by section 3121(a)(1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law.

(6) A plan shall be considered as meeting the requirements of paragraph (3) during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements.

that Code.[2] Respondent has taken the position that, although the profit-sharing plan involved may have been properly approved as tax exempt by the Commissioner in 1943, its subsequent administration and operation have disqualified it as a profit-sharing trust under section 401(a). His contention is that such administration and operation of the plan has resulted in its being, in substance, terminated by failure of the company to make contributions to the corpus of the trust since 1947. In this connection he alleges on brief that the company will never make further contributions because the likelihood of its ever realizing sufficient profit under the plan to do so is so remote as to constitute an unreality. His further contention is that the plan has been so administered and operated as to result in discrimination in the vesting of its benefits in favor of the company's president and controlling stockholder. He makes the additional argument that petitioner must lose its tax-exempt status because its operation has resulted in violation of section 401(a)(3)(A), in that, during the years before us, the benefits of the plan did not extend to 70 percent or more of all the company's employees or 80 percent or more of all eligible employees under the plan. We disagree with each contention.

The purposes of the involved plan as originally approved by the Commissioner are set forth clearly in the preamble to the declaration of trust which was its origin—

WHEREAS the COMPANY desires to promote continuity of employment of its employees and particularly of its most experienced or otherwise valuable employees; and

WHEREAS the COMPANY desires to share a portion of its profits among the foregoing class of its employees who are chiefly responsible for such profits being earned; and

WHEREAS the COMPANY intends to make contributions to the TRUSTEE hereinafter named, for the purposes hereinafter recited for each succeeding year of the COMPANY ended January 31, commencing with the year ended January 31, 1943, and for as long as said trust remains in existence * * *

Even though there is authority to the effect that a qualified profit-sharing trust need not contain a fixed formula of contribution to its corpus, *Lincoln Electric Co., Etc.* v. *Commissioner*, 190 F. 2d 326 (C.A. 6), reversing 14 T.C. 598, petitioner's plan of contribution by the company was nevertheless provided for by a fixed formula. The company made contributions in strict accordance therewith. The contribution formula, as approved by the Commissioner, clearly indicated the intention that only such profits of the company as exceeded

[2] SEC. 501. EXEMPTION, FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.

10 percent of the company's combined surplus and invested capital would ever be the source of contributions. No one who reads this agreement could reasonably claim to be misled into believing that contributions would be made from lesser profits. The plan was approved and put into effect during war years when profits might be expected to be abnormally high. It is these profits which were originally designed by the plan to be shared with the company's permanent as distinguished from transient employees plus profits of like magnitude earned in subsequent years through the efforts of such permanent employees. The passage of time and normal employee turnover would logically bring about a steadily declining number of employees who would receive benefits under the plan in the ordinary course of economic events, and we cannot believe that the Commissioner who approved the plan originally was in any way influenced to believe otherwise.

The respondent contends, however, that the company's failure to make contributions (supposedly under an amended formula) since 1947 has terminated petitioner's qualification because of his regulation, sec. 1.401–1(b)(2), Income Tax Regs., which holds that a plan to retain its qualified status must provide for "recurring and substantial contributions out of profits for the employees." This section of the regulations deals with the proposition that a profit-sharing plan may lose its qualification and therefore tax exemption because of operation which amounts to abandonment. Such operation is epitomized in the regulation by failure of recurring and substantial contributions *under the plan*. On the record before us we cannot find that the company's contributions have been other than recurring and substantial within the meaning of the regulation and of the plan itself. The record discloses no single year since petitioner's inception when the company did not make exactly the contributions called for by the plan. The frequency of the contributions and the amounts thereof were from its inception clearly dependent upon the size of the company's annual profit and the respondent is in no position to say that he was unaware of either the provisions of the plan or the amount of profit experienced by the company for any year in which it filed a corporate return. In his approval of the plan we think the Commissioner has by so doing approved the frequency and substantiality of the contributions so clearly provided for therein. It is the alteration of the effect of the provisions of a qualified and approved plan by administration and operation thereof in a manner which violates the fundamental purpose of Congress in enacting section 401 that gives rise to the respondent's right to declare a once approved plan no longer approved and tax exempt. *Time Oil Co.*, 26 T.C. 1061, remanded on other grounds 258 F. 2d 237 (C.A. 9). Here, however, we have no such alteration

for the plan has been operated and administered in exact accordance with its provisions. In fact, only by an amendment of its contribution formula could its operation result in the coverage and benefits which respondent contends must now exist in order that petitioner retain its tax-exempt status. This record does not convince us that the company has abandoned its profit-sharing plan or that, should profits again reach the point where the formula dictates contribution, contributions will not be made. It would be pure conjecture to conclude that its profits will never reach that point in the future.

As to respondent's contention that operation of the plan has resulted in discrimination in favor of a statutorily "prohibited" class of employee, i.e., the company's chief stockholder, we think it rests upon a slender reed. The stipulated records of petitioner clearly show that all employees who have become eligible for benefits under the plan have received such benefits in exact accordance with its provisions. It is true that no employees have become eligible since 1947, the last year of contribution, but the Commissioner, in approving the plan, also approved the fact that only profits in excess of the plainly stated formula were to be shared with the company's employees and then only with the employees whose efforts made possible such excess profits. We do not understand that this constitutes discrimination. Cf. *Ryan School Retirement Trust*, 24 T.C. 127. In any event it does not constitute a change brought about by discriminatory practices in the plan's operation. *Time Oil Co., supra.* Respondent makes much of the fact that under the terms of the plan, to the effect that the share of the corpus income vested in employees who became covered by the plan but who were separated from employment under circumstances giving rise to forfeiture of their benefits would be added pro rata to the accounts of remaining eligible employees and the appreciated corpus divided among the last three eligible employees remaining covered thereby, the company's chief stockholder is acquiring the greatest share in such remaining benefits of the trust. We do not understand how this could be otherwise in the normal course of events assuming the continued existence and good health of Swan. The plan is to benefit permanent as distinguished from transient employees. It is to be expected that the company's chief stockholder and managing officer will be the most permanent of the employees covered by the plan. To say that he is bound to be one of the last three employees among whom the sizable remaining corpus will be divided is again pure conjecture. There are still six employees covered by the plan and he is the eldest of them, being of the age of 77. We, of course, can make no finding that he will be one of the last three beneficiaries of the corpus division. We find no evidence of discrimination here and particularly

none which results from administration and operation of the plan which amounts to an alteration of its intendments. *Time Oil Co., supra.*

Respondent's contention that this petitioner must fail to retain its tax-exempt status because its plan does not benefit a sufficient percentage of the company's employees as provided by section 401(a) (3)(A) we think has little merit. Subparagraph (A) is clearly in the disjunctive with subparagraph (B) which provides that a plan is qualified which, other provisions of the statute being complied with, provides coverage for "such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of" the so-called prohibited supervisory employees. We have above determined that the plan is not discriminatory within the meaning of the statute. It is clear that the requisite "classification" is provided for in that all persons who have been in the continuous employment of the company for 2 years at the close of a year for which the company has made a contribution to the trust are eligible for benefits under the plan.

We can find no other provision of either section 401 or section 501 which would have the effect respectively of disqualifying this profit-sharing plan or rendering petitioner non-tax-exempt and respondent does not direct our attention to any such provisions.

*Decision will be entered for the petitioner.*