LINCOLN ELECTRIC CO. EMPLOYEES' PROFIT–SHARING TRUST et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 11211.

United States Court of Appeals
Sixth Circuit.

June 28, 1951.

Thomas V. Koykka, Cleveland, Ohio, (Thomas V. Koykka, and McKeehan, Merrick, Arter & Stewart, all of Cleveland, Ohio, on the brief), for petitioners.

Hilbert Zarky, Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, A. F. Prescott, and Harry Baum, all of Washington, D. C., on the brief), for respondent.

Before HICKS, Chief Judge and SIMONS and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The main question to be decided is whether the income of a profit-sharing trust established by the Lincoln Electric Company for its employees, is exempt from taxation under the provisions of Internal Revenue Code, § 165(a), 26 U.S.C.A. § 165 (a). An alternative issue is whether the trust indenture creates separate trusts, one for each employee. If the petitioner is right in its main contention, the second question need not be decided, and it is agreed that if the petitioner is right in either contention no tax is due.

The provisions, purpose and effect of the trust are set forth in Lincoln Electric Co. v. Commissioner, 6 Cir., 162 F.2d 379, 9 A. L.R.2d 272, and Commissioner v. Lincoln Electric Co., 6 Cir., 176 F.2d 815, both decided by this court. The first of these cases dealt with the question whether the employer's contribution was an ordinary and necessary expense, and the second with the question of the reasonableness of its expenditure. The present case is in respect to whether the earnings of the trust are taxable and involves a different statute and the liability of a different taxable entity.

Section 165(a), as rewritten in the Revenue Act of 1942, exempts from taxation a trust forming part of a stock bonus, pension or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries; if the employer's contributions to the trust are made for the purpose of distributing its corpus and income in accordance with the plan and if, under the instrument, it is impossible for such corpus or income to be diverted to purposes other than the exclusive benefit of the employees, and if the trust, which is a part of the plan, benefits the required percentum of all employees and does not discriminate in favor of those who are officers, shareholders, supervisory or highly compensated employees. The Tax Court found nothing in the language of the statute which expressly bars the present trust. It relied upon Regulation 111, § 29.165–1, issued July 8, 1943 and supplemented December 13, 1944. Regulation 111 is printed in full in the margin.[1] This regulation

---

1. "(Reg. 111) Sec. 29.165–1. Employees' Trusts.—(a) *In general.*—In order that a trust may be exempt under section 165 (a) it must be part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries. The trust must be formed and availed of solely to aid in the proper execution of a plan which is a definite written program and arrangement communicated to the employees, solely designed and applied to enable such employees or their beneficiaries to share in the capital or profits of such employer's trade or business or to provide for the livelihood of such employees or their beneficiaries after the retirement of such employees.

"* * * A profit-sharing plan, on the other hand, is a plan established and maintained by an employer to provide for the participation in his profits, by his employees or their beneficiaries, based on a definite predetermined formula for determining the profits to be shared and a definite predetermined formula for distributing the funds accumulated under the plan after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as illness, disability, retirement, death or severance of employment. * * *

"The term 'plan' implies a permanent as distinguished from a temporary program. While the employer may reserve the right to change or terminate the plan, and to *discontinue contributions* thereunder, if the plan is abandoned for any cause other than business necessity within a few years after it has taken effect, this will be evidence that the plan from its inception was not a bona fide

the court construed as a reasonable and fair interpretation of the statute, not inconsistent with it nor inappropriate to accomplish the purpose of Congress.

The court agreed, in the main, with the Commissioner in his interpretation of the statute and the regulation, and concluded that a reading of § 165(a), together with § 23(p) with which it must be integrated, warrants the conclusion that the plan is not a permanent program in that it provides for but a single contribution by the employer, that it is not definite in that it fails to provide a formula for determining the profits of the employer to be shared, in that it makes no provision for recurrent contributions to the trust. Three judges of the Tax Court dissented on the ground that nowhere does the statute limit the exemption of the trust to a plan which is permanent. It says nothing about program or definite formula for determining profits. They argue that the profits are determined by the $1,000,000 contributed to the trust; that the word "plan" under the ordinary canon of statutory construction, must be used in the ordinary sense and includes what the employer did; that the Commissioner's power to promulgate the regulation was improperly exercised when he narrowed the expression "plan" by requiring it to entail permanency and definite formula. They point to the fact that the grantor's profits were shared with its employees and their beneficiaries beyond recall, and see no distinction between a plan calling for a single contribution and a plan which requires recurrent contributions over a period of years. Having made an irrevocable contribution for its employees with a plan entailing ultimate segregation and disposition at the end of ten years, the petitioner should not be denied the statutory exemption.

Although § 23(p) concerns itself with the employer's right to deduction and not to the taxability of the trust, yet, since both sides attach some significance to the language of this section as an aid to interpretation, it is necessary to note its phrasing. It permits deductions in computing net income of contributions by an employer to an employee trust under a general rule which includes contributions to a profit-sharing plan, but it also provides, "If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing or annuity plan, or similar plan deferring the receipt of compensation, this paragraph shall apply as if there were such a plan." And Regulation 111, § 29.23(p)–1 recites that that section is not confined to formal stock bonus, pension, profit-sharing and annuity plans or deferred compensation plans, but includes any method of contributions or compensation having the effect of a stock bonus, pension, profit-sharing or annuity plan or similar plan deferring the receipt of compensation.

In this environment we turn to Regulation 111 to see if there is support for the Commissioner's position and the Tax Court decision that for a trust to be exempt, a plan must not only be based upon a definite pre-determined formula and a permanent as distinguished from a temporary program, but must require recurrent contributions by the employer over a period of years. The Commissioner argues that the appellant's plan is not permanent because it provides for but one contribution in a single year, that it is not based upon a definite pre-determined formula for determining the profits to be shared and for distributing the accumulated funds after a fixed number of years. Nowhere does the regulation define the term "permanent," except as it may be distinguished from temporary, and nowhere does the regulation catalogue the elements requisite to a pre-determined formula. If tested by the requirements of the trust indenture for investment and distribution of trust funds, the provisions of the trust indenture provide a formula that is definite by any standards that may be applied to it. If measured by the profits

program for the exclusive benefit of employees in general. * * * The permanency of the plan will be indicated by all of the surrounding facts and circumstances, including the likelihood of the employer's ability to *continue contributions* as provided under the plan. * * *" (The emphasis is that of the Tax Court.)

to be shared, it would seem to be equally definite. There is nothing lacking in precision in the contribution to a trust of a million dollars payable at once out of profits in a given tax year, and that this contribution was pre-determined is not capable of being controverted. That it was constituted in response to a carefully thought-out plan, the resolution of the appellant's directors which was made a part of the trust indenture, clearly demonstrates. By it the company proposed to share a definite portion if its profits with certain officers and employees on account of the value of services rendered; that to promote the conservation of this compensation by the employees, the funds should be set aside in a trust for future distribution; that such plan will safeguard the future of the employees, become of more permanent benefit to them than if presently distributed, as it will assist in providing financial security in time of adversity, that such plan will assist in the effort of the government to curb the inflationary effect of increased consumer purchasing power; and that the investment of funds of the plan in governmental bonds or obligations will assist in financing the National Defense Program.

That the trust was intended to be and, in effect, is in pursuance of a profit-sharing plan, seems perfectly clear. But the Commissioner argues that it is not a trust exempted by the regulation, and to reach this conclusion, accepted by the Tax Court, he emphasizes the language of the third paragraph of the regulation wherein it is said that the employer may reserve the right to "discontinue contributions," and the clause "the permanency of the plan will be indicated by all of the surrounding facts and circumstances including the likelihood of the employer's ability to *continue contributions* as provided under the plan. * * *" No other phrasing of the regulation even remotely permits an inference that recurring contributions are the inescapable elements of a tax exempt trust. The reasoning is strained. While many,

if not most profit-sharing trusts are based upon recurring contributions, there is no generally recognized formula for the creation of a profit-sharing plan,[2] and neither the statute nor the regulation undertakes to provide one. The mere fact that the regulation refers to contributions in the plural does not, in the absence of other criteria, warrant an interpretation that limits exempt trusts to those which provide for recurring contributions over a term of years, for the plural, in its present context, must include the singular. When we consider that the regulation was framed by experts in taxation, that they had from two to three years to frame a regulation appropriate to the carrying out of the statutory mandate, it seems to us inconceivable that if its framers thought it appropriate, under the language of the Act, to limit exempt trusts to those providing for recurring contributions, they could have found no better way of expressing that view than in the merely fortuitous plurals quoted above.

Nor is any logical reason advanced by the Commissioner or the Tax Court why a trust created by a single contribution is not as effective in promoting the purpose of the Congress in contributing to peaceful relationship between management and labor than is one that provides for recurring contributions. Of course, the Congress sought to prevent the use of an employee trust to minimize or evade taxes, and it is urged that by a single contribution a taxpayer may create a trust in a year of high profits and refrain from doing so in years of low profits. But that argument is of no avail where the trust is irrevocable, where neither its corpus nor income may be recovered by the employer and where he surrenders the opportunity of deduction for contributions in other years which may be years of greater profit. Moreover, Regulation 111 specifically recognizes the right to change or terminate the plan, to discontinue contributions thereunder, and to abandon it because of business necessity within a few years after it has taken effect, and this right the employer completely

2. See "Survey of Experience in Profit-Sharing and Possibility of Incentive Taxation," Senate Report No. 610, 76th Con-

gress, 1st Session, made pursuant to Sen. Res. 215, 75th Congress.

330

surrenders by an irrevocable trust with a corpus created by a single contribution. Finally, if a trust to be exempt depends upon recurring additions to its corpus, such accretions are realistically recognizable in the present plan, for a lump-sum contribution required to be invested grows from year to year in far greater degree than an equal share of employers profits periodically contributed over many years. We perceive no departure from the purpose of Congress, the language of the statute or the phrasing of the regulation when an employer conceives a plan for sharing his profits with his employees, and having in mind a definite share of such profits to be distributed anticipates future contributions and secures his employees from the hazards of business reverses by the immediate creation of a definite trust corpus at once created to maintain the goodwill of the employees by the safe-guarding of their future from adversity.

■ Section 165(a) and, of necessity, any regulation adopted for its implementation, must be interpreted in the light of the statutory scheme. Tavannes Watch Co., Inc. v. Commissioner, 2 Cir., 176 F.2d 211. There the court pointed out that the Act was primarily designed to insure that profit-sharing plans be operated for the welfare of the employees in general and to prevent the trust device from being used for the benefit of shareholders, officials or highly paid employees, and to insure that it shall be impossible for any part of the corpus or income to be used for purposes other than the exclusive benefit of the employees. These purposes are materialized in the present trust. That they should be liberally implemented is, we think, also the teaching of § 23(p).

■ The Commissioner pointed to other infirmities in the plan to establish its lack of exemption. The Tax Court refused to accept his views in respect to them. So do we. If we are wrong in concluding that Regulation 111 is no bar to the exemption of the trust here involved and must be interpreted otherwise than as the Commissioner and the Tax Court interpret it, then the regulation is itself invalid for the reasons set forth by the dissenting judges of the Tax Court with whose views we are in complete accord. An administrative regulation is entitled to respect but the authority to prescribe rules and regulations is not the power to make law, for no such power can be delegated by the Congress. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 139, 56 S.Ct. 397, 80 L.Ed. 528; Burnet v. Chicago Portrait Co., 285 U.S. 1, 16, 52 S.Ct. 275, 76 L.Ed. 587. Concluding as we do, that the trust here involved is exempt under § 165(a), we find no reason for considering whether, in the alternative, the indenture created multiple trusts.

Reversed and the cause remanded to the Tax Court for further proceedings consistent herewith.