E. R. Wagner Manufacturing Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 28488.   Promulgated June 25, 1952.

*Frederic Sammond, Esq.*, for the petitioner.
*Arthur B. White, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined deficiencies as follows:

| Year | Excess profits tax | Declared value excess-profits tax | Income tax |
|---|---|---|---|
| 1943 | $44,100.00 | | |
| 1944 | 48,855.84 | $2,335.60 | |
| 1945 | 53,235.74 | | |
| 1946 | | | $9,600.78 |

The only issue is whether the petitioner is entitled to deduct for each of the four years the amount which it contributed for that year to its employees' profit-sharing trust.   The facts have been stipulated.

The returns for the taxable years were filed with the collector of internal revenue for the district of Wisconsin.

Section 23 (p) (1) (C) allows deductions for contributions of an employer to an employees' trust, exempt under section 165 (a), if paid by the employer under a profit-sharing plan, in an amount not to exceed 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the profit-sharing plan. Section 165 exempts a trust forming a part of a profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries, if certain requirements are met.   The petitioner points out that it established a trust as a part of a profit-sharing plan for the exclusive benefit of its employees; annual contributions were irrevocably made by the petitioner to the trust in order to distribute to its employees the earnings and principal of the fund accumulated by the trust in accordance with the plan; no part of the corpus or income of the trust can possibly be used for or diverted to purposes other than for the exclusive benefit of the employees; and the classification of participants and the benefits under the plan do not in any way dis-

criminate in favor of officers, shareholders, supervisory employees, or highly compensated employees. The Commissioner does not make any contrary contention.

The only fault which the Commissioner finds with the plan or the operation under it is based entirely upon the amendment made in December 1946 whereby the petitioner reduced the percentage of profits in the formula from 35 to 10. He concludes that the petitioner never intended to contribute more than 10 per cent of its profits, 35 per cent was inserted only to mislead him during the high excess profits tax period, and the trust was never a part of a true profit-sharing plan because the plan lacked a permanent program of annual contributions in accordance with a proper predetermined definite formula.

The plan of the petitioner contained no contribution formula when adopted in 1943 because at that time there was no such requirement. That requirement was added to the Regulations on December 13, 1944, by T. D. 5422, 1944 C. B. 318. The first ruling calling for a fixed formula was issued on May 25, 1944, I. T. 3661, 1944 C. B. 315, and thereafter, the petitioner was told by representatives of the Bureau to insert such a formula in its plan. Article X of the plan permitted amendments and the petitioner proposed to amend the plan so that contributions would be "at least 10 per cent of its profits," but that proposal was not satisfactory to the representatives of the Commissioner. The petitioner had contributed $49,000 to the plan for 1943, which was almost 35 per cent of the profits of the petitioner for 1943. The plan was amended in the latter part of 1944 to provide:

> Subject to the right reserved by the Company to terminate or amend this Indenture and the Plan hereby created (as provided in Article X hereof), the Company hereby undertakes to contribute to the Trustee in trust in accordance with this Plan on or before March 1 of each year a sum of money or property of value equal to 35% of the total net profits of the Company before deductions for Federal and State taxes on income for the calendar year last ended, as determined by the Board.

That was followed by other provisions further limiting the contribution, one of which was that it should not exceed the maximum amount allowable as a deduction from gross income. The plan as thus amended was approved by the Commissioner as meeting the requirements of section 165 (a). The petitioner then announced the plan to the participating employees in a booklet. It contributed to the plan for each of the years 1943, 1944, and 1945 amounts ranging from $49,000 in 1943 to about $60,000 in 1945, which were in each case the maximum amount which could be deducted, that is, 15 per cent of the total compensation of participating employees. Those contributions never equaled 35 per cent of the profits. They were 24 per cent of the profits for 1944, for example.

The petitioner submitted to the Commissioner on September 5, 1946, a proposal to reduce the contribution formula from 35 per cent to 10 per cent, but was told that the plan would not be approved if changed because it would then not meet the permanency requirements of the regulations. Nevertheless, the petitioner, on December 23, 1946, amended the plan to reduce the contribution formula from 35 per cent to 10 per cent, and thereafter its maximum contributions to the plan for the years 1946 through 1950 were 10 per cent of the profits, except that there was a loss in 1949 and no contribution was made. Thereafter, the contributions ranged from a low of about $23,000 in 1948 to a high of about $46,000 in 1947.

The Commissioner argues that the intention of the petitioner from the inception of the plan was to limit its contributions to the trust to 10 per cent of its profits; it never disclosed that intention to the Commissioner until the amendment was made in 1946; the principal purpose of the plan was not to benefit employees but was to avoid excess profits taxes; and, as a result, the plan was never a bona fide one within the meaning of the Code and the regulations. It is not a valid criticism of the plan to say that irrevocable contributions to the trust were made to obtain tax deductions. That was the incentive which Congress deliberately held out to encourage corporations to create and contribute to profit-sharing plans for the benefit of their employees. Furthermore, giving away money to gain a deduction reducing tax by less than 100 per cent of the contribution is a poor way to become rich. The stipulation and the record indicate that the petitioner did not mislead the Commissioner to believe that the percentage of profits would never be changed. The power to amend was clearly set forth in article X of the plan which the Commissioner approved. The 35 per cent provision was incorporated in the plan by an amendment made at the insistence and with the knowledge of the Commissioner, no assurance was given that it would not be again changed, and the Commissioner can not claim surprise when he learns that another amendment was made to substitute a different percentage. The Commissioner does not object to the existence of the power to amend but only to the exercise of it. The petitioner could not by the exercise of that power, or in any other way, recapture funds once they were contributed to the trust. The 35 per cent of profits had never been a limiting factor and it would have been a limiting factor only in 1948 if it had been left in the plan through 1950.

The Commissioner says that no definition of a profit-sharing plan is given in the Code and, therefore, any plan must meet the requirements of his regulations if the contributions are to be deductible and the trust exempt from tax. He refers particularly to provisions of Regulations 111, section 29.165–1 stating that the plan must be a

permanent, as distinguished from a temporary, program and must be based upon a definite predetermined formula for computing the profits to be shared. Congress inserted many requirements in sections 23 (p) and 165 (a) but did not provide that the plan had to be permanent or had to contain a formula of any kind. Even an informal plan was to be sufficient. The predetermined formula requirement was not originally a part of Regulations 111 but was inserted on December 13, 1944. However, the petitioner's plan is permanent in that all contributions are irrevocable and the plan must continue indefinitely until the beneficiaries of the trust receive all of the trust funds. Furthermore, the plan always contained a definite predetermined formula for computing the profits to be shared after one was incorporated in the plan in 1944. A plan involving a single contribution was held permanent enough to exempt the trust under section 165 (a) in *Lincoln Electric Co. Employees' Profit-Sharing Trust* v. *Commissioner*, 190 F. 2d 326, reversing 14 T. C. 598. This is a much stronger case for exemption than that one since here profits must be shared each year and the trust is to continue indefinitely.

Also, this plan "materialized" the purpose of section 165 (a), cf. *Produce Reporter Co.*, 18 T. C. 69, and its end is not in sight. It has been in continuous operation since its inception in 1943 with from 124 to 184 participants at all times through 1950. Three retired employees were receiving monthly payments, five beneficiaries had received death benefits, and ninety-seven employees had received or were receiving termination-of-employment payments at the time of the trial.

Regulations 111, section 29.165-1 provides:

While the employer may reserve the right to change or terminate the plan, and to discontinue contributions thereunder, if the plan is abandoned for any cause other than business necessity within a few years after it has taken effect, this will be evidence that the plan from its inception was not a bona fide program for the exclusive benefit of employees in general. * * * The permanency of the plan will be indicated by all of the surrounding facts and circumstances, including the likelihood of the employer's ability to continue contributions as provided under the plan.

No argument is made or can be made that the petitioner completely abandoned its plan. Continuance of the plan is inherent in a reduction of the percentage of profits in the formula. The Commissioner does not say that the reduction was a partial abandonment of the plan. The regulations, as they were during the taxable years, did not refer to curtailment of the contributions or provide that the predetermined formula could not be changed. They permitted changes. The question of reducing the percentage of profits to be shared was not the subject of any rule or regulation until after the taxable years when, in 1947.

Mim. 6136, 1947–1 C. B. 58, was issued. It states that there must be a valid reason for any curtailment and that reason must be consistent with tne assumption that the plan has been from its inception a bona fide program for the exclusive benefit of the employees but an amendment is not objectionable merely because it effects a reduction in the contributions.

The "business necessity" reasons discussed by the Commissioner in his brief and regulations are generally reasons for abandonment rather than for curtailment, and any one of them which might serve as a reason for curtailment is no better than the reason advanced by the petitioner for its December 1946 amendment. Contributions under the December 1946 amendment were smaller than they would have been had there been no amendment, but each was still a genuine irrevocable contribution. The petitioner contends that its financial condition in the latter part of 1946 required it to substitute 10 per cent for 35 per cent in the formula. The conditions to which it points are that its quick assets at the close of 1946 were less than its current liabilities, a situation which had not previously existed. The Commissioner, on the other hand, argues that the reduction in the percentage of profits was prompted solely by the termination of the excess profits tax. There is nothing in the Code which would prevent the petitioner from changing the formula to reduce the percentage of profits and there was nothing in the regulation during the taxable years · which prevented that change. The petitioner continued to make substantial contributions to the trust which was the very thing which Congress wanted to encourage.

The Commissioner in effect has said to the petitioner, you lose all deductions for all years because you are not entitled to a higher one than you claim for the last year. The advantage to Congress, to the Commissioner, or to beneficiaries of such an attitude towards taxpayers generally is not apparent. It would make taxpayers wary and place them in an extremely difficult position in that they would have to choose a formula at the beginning to which they would be bound thereafter unless some condition arose which the Commissioner would deem justification for a change in the formula. It is possible that the reduction here was prompted by the termination of the excess profits tax. A larger percentage of a contribution would be offset by the tax reduction during the excess profits tax years than thereafter when the corporate tax rates were lowered. Any contribution thereafter was at a greater out-of-pocket cost to the petitioner. The petitioner was surely aware of that lessened incentive for the contribution and was influenced by it. Perhaps the "cash" situation· was more of an excuse than a reason for the reduction from the relatively high 35 per cent figure.

But 10 per cent is a respectable amount for the purpose which Congress had in mind and to enable the trust to carry out its purposes. If that were not so, there would be more to the Commissioner's complaint against the reduction. No harm or violation of the intent of Congress appears in reasonable changes in the formula made by the petitioner as conditions change.

The contributions made to the trust in 1943, 1944, and 1945 were made in accordance with the predetermined formula, then a part of the plan, which had been approved by the Commissioner. The trust was exempt under section 165 (a) during all of those years and the contributions were deductible in their entirety under section 23 (p) (1) (C). The amendment which was made at the end of 1946 had no retroactive effect upon the right of the trust to exemption during its first three years or upon the irrevocable contributions made for those years. If 10 per cent instead of 35 per cent had been in the original profit-sharing formula, the trust would have been exempt just the same under section 165 (a). The December 1946 amendment did not change the exempt character of the trust and contributions under the new formula continued to be deductible under section 23 (p) (1) (C).

The Commissioner argues, in the alternative, that if the plan was a permanent one it is only because it may be considered as one requiring a maximum of 10 per cent of profits from its inception and, therefore, each deduction for the taxable years may not exceed 10 per cent of profits. The discussion above demonstrates the lack of merit in this contention.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, concurs only in the result.