ESTATE OF HAROLD S. DAVIS, DECEASED, MARY DAVIS, EXECUTRIX, AND MARY DAVIS, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40005. Filed June 30, 1954.

808

*John F. Langs, Esq.*, for the petitioners.
*Charles Speed Gray, Esq.*, for the respondent.

■■■■■■■■■■■■

## OPINION.

WITHEY, *Judge:* The single issue for determination is whether the amount received by petitioner on November 22, 1948, as the interest of the decedent in the executive trust is taxable as gain from the sale or exchange of a capital asset held for more than 6 months, as reported by petitioner, or as ordinary income, as determined by respondent. Under the provisions of section 165 (b) of the Internal Revenue Code, where the total distributions payable by a trust that is exempt from taxation under section 165 (a) with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution in excess of the employee's contributions is to be considered a gain from the sale or exchange of a capital asset held for more than 6 months. Pertinent portions of section 165 are set out below.[1]

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan ;

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilites with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries ;

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees ; and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

(5) A classification shall not be considered discriminatory within the meaning of paragraphs (3) (B) or (4) of this subsection merely because it excludes employees the whole of whose remuneration constitutes "wages" under section 1426 (a) (1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried

Since the decedent made no contributions to the trust and since his interest was paid in one sum, there is no controversy between the parties as to the amount in question qualifying under subsection (b) of section 165 for treatment as gain from the sale or exchange of a capital asset held for more than 6 months if the trust was exempt from tax under subsection (a). The primary question, therefore, is whether the trust was so exempt at the time of the distribution to petitioner in November 1948.

In her original brief, and on the ground that she was in privity with the corporation, as settlor of the trusts, the petitioner took the position that the decision of the United States Court of Appeals for the Sixth Circuit in *H. S. D. Co.* v. *Kavanagh, supra*, was res judicata of the questions raised by respondent as to the operations of the trusts. However, on reply brief she merely contends that the decision of the Court of Appeals on the issues and facts presented there, which she claims are, in all material respects, identical with those presented here, is authoritative and should be followed. The respondent, on the other hand, takes the position that the decision of the Court of Appeals is not res judicata of the question presented here, namely, the status of the executive trust under section 165 (a) of the Code at the time it made the distribution to the petitioner in November 1948 of the decedent's interest therein. Concededly, the principal question before the Court of Appeals was whether the two trusts were exempt under section 165 (a) for the fiscal year 1944. Under the principles announced by the Supreme Court in *Commissioner* v. *Sunnen*, 333 U. S. 591, if it be conceded that petitioner was in privity with the corporation, the holding of the Court of Appeals that the trusts were exempt during the fiscal year 1944 is not conclusive of the status of either of them for the fiscal year 1949. Although the holding of the Court of Appeals as to status of the trusts in 1944 is not conclusive of the question here, many of the facts involved there are also involved here

or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from "wages" by section 1426 (a) (1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law.

(6) A plan shall be considered as meeting the requirements of paragraph (3) of this subsection during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements.

(b) TAXABILITY OF BENEFICIARY.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22 (b) (2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.

and a number of the legal questions involved there are likewise involved here. Under the circumstances the Court of Appeals' holdings of such questions are persuasive authority and are to be accorded recognition as such.

While conceding that *H. S. D. Co.* v. *Kavanagh, supra,* involved the status of the trusts for the fiscal year 1944, the petitioner points out that the case also involved the correctness of the respondent's ruling of April 8, 1948, wherein it was held that the two trusts had been so operated from their inception in 1942 to the time of the ruling as to forfeit their right of exemption from the time of their formation. Petitioner further points out that the respondent has based the determination here involved upon that ruling. Against this background the petitioner takes the position that, since in *H. S. D. Co.* v. *Kavanagh, supra,* the Court of Appeals had before it all the facts relating to the trusts from the time of their inception to April 30, 1947, and concluded therefrom that the trusts were exempt under section 165 (a), that since no amendments, not considered by the Court of Appeals, have been made to the trust agreements, and that since no facts or change in operation of the trusts has occurred since April 30, 1947, which would bar exemption of the trusts, we should follow the holding of the Court of Appeals and conclude that the executive trust was also exempt at the time of the distribution of the decedent's interest in that trust.

The respondent recognizes that the correctness of his ruling of April 8, 1948, was involved in *H. S. D. Co.* v. *Kavanagh, supra,* that in that case the Court of Appeals had before it the facts relating to the two trusts from the time of their inception to April 30, 1947, and that the Court of Appeals there held that the trusts were exempt for the fiscal year 1944. However, he contends that the trusts were not exempt during their fiscal year 1949 when the distribution in question was made, because they were discriminatory in operation and the corporation's plan for sharing profits lacked permanence.

In support of his contention that the trusts were discriminatory in operation, the respondent urges that, as a result of profitable real estate investments of contributions to the executive trust and the investment solely in the stock of the corporation of the contributions to the employee trust, assets of the executive trust as of April 30, 1948, exceeded $100,000 whereas the assets of the employee trust were slightly in excess of $14,000. He further urges that on April 30, 1949, and after the distribution to the petitioner of the $32,948.28 involved herein, the interest of the two remaining participants in the executive trust amounted to $54,699.58, plus forfeitures in the amount of $7,879.84 allocated to participants, and that on the same date benefits paid to about 22 participants of the employee trust amounted to less than $5,000 and that there was only one participant having an

interest in trust assets of about $13,500 and that said participant had not been employed by the corporation since 1944.

The foregoing contentions of the respondent as to discrimination are in principle a repetition of the argument made by the collector in *H. S. D. Co.* v. *Kavanagh, supra,* and there rejected by the Court of Appeals. The only parcels of real estate in which funds of the executive trust were invested were the Hancock Street property in Detroit, which was acquired on July 30, 1942, and the factory building in Richmond, which was acquired during the fiscal year 1946. The Hancock Street property was sold on April 2, 1945, at a profit of approximately $14,000. The Richmond property was sold during the fiscal year 1948, but the record does not indicate that any profit was realized on the sale. In *H. S. D. Co.* v. *Kavanagh, supra,* the Court of Appeals considered the question of whether the profit made by the trust from its dealings in the Hancock Street property and the fact that the larger proportionate contributions were made by the corporation to the executive trust prior to the amendments to the Internal Revenue Code made by the Revenue Act of October 21, 1942, than were made to the employee trust, resulted in the trusts being operated in such a manner as to discriminate in favor of employee-participants of the executive trust and unfavorably to the employee-participants of the employee trust. The court there pointed out that the Hancock Street property had been acquired, and the disproportionate contributions had occurred, before the amendments to the Code on October 21, 1942, prohibiting discrimination. It further pointed out that after said amendments all contributions made by the corporation to the two trusts were based on a uniform percentage of the total basic compensation of all employee-participants. It then concluded that "In the instant case, there was no discrimination as to any of the contributions or investments in either of the trusts, subsequent to the amendments [by the Revenue Act] of 1942" and held that "the plan met the requirements of Section 165 (a) of the Internal Revenue Code, as amended, and that the trusts are entitled to exemption."

As a part of his argument that the trusts were operated in a manner that resulted in discrimination, the respondent further contends that in reaching its decision in *H. S. D. Co.* v. *Kavanagh, supra,* the Court of Appeals did not consider the acquisition by the executive trust of the Richmond property during the fiscal year 1946. He urges that since that transaction was substantially the same as the ownership of the Hancock Street property, except for the lessee, and that since the transaction occurred several years after the amendments made to section 165 (a) by the Revenue Act of 1942, the transaction alone is proof of discrimination in favor of the employee-participants

of the executive trust. Although the court did not specifically mention the Richmond property in its opinion, and while some of the language used by the court tends to support respondent's contention that that court did not consider the acquisition of the property by the executive trust, the evidence in the instant case shows that the fact of such acquisition and ownership was before the court. Since such fact was before the court, and since the court concluded that "there was no discrimination as to any of the contributions or investments in either of the trusts, subsequent to the amendments" made to section 165 (a) by the Revenue Act of 1942, we think it must be concluded here that the court considered all investments, whether in real estate or otherwise, made after the amendments by the Revenue Act of 1942 and saw nothing in them which it deemed to be discriminatory.

The question of permanence of the corporation's profit sharing plan was raised in this proceeding for the first time by the respondent on brief. No mention of the matter is contained in the respondent's letter of April 8, 1948, on which the notice of deficiency involved herein was based nor was any mention made of the matter at the hearing of the instant proceeding. However, in view of what appears below, this belatedly raised question affords the respondent no aid here.

In support of his position that the corporation's plan for sharing profits lacked permanence, the respondent relies on the following: That the corporation discontinued its manufacturing business in November 1944 and terminated the employment of all of its hourly-paid employees, except the one who was away in the military service, with the result that the plan by which hourly-paid employees and executive employees shared in the corporation's profits was continued in effect for only about 3 years and that after the fiscal year 1945 only executive employees shared under the plan and that the corporation made no contribution to the executive trust for the fiscal year 1948 and apparently in that year abandoned the plan as to the executive employees.

Regulations 111 provide, in part, as follows:

SEC. 29.165–1. EMPLOYEES' TRUSTS.—(a) *In general.*—* * *

The term "plan" implies a permanent as distinguished from a temporary program. While the employer may reserve the right to change or terminate the plan, and to discontinue contributions thereunder, if the plan is abandoned for any cause other than business necessity within a few years after it has taken effect, this will be evidence that the plan from its inception was not a bona fide program for the exclusive benefit of employees in general. Especially will this be true in the case of a pension plan under which pensions were fully funded for the highly paid employees or others in favor of whom discrimination is prohibited under section 165 (a), and which was abandoned soon after the pensions for such favored employees had been provided. The permanency of the plan will be indicated by all of the surrounding facts and circumstances, including the likelihood of the employer's ability to continue contributions as provided under the plan. * * *

Respecting the corporation's discontinuance of its manufacturing business in 1944 and the consequent termination of the employment of its hourly-paid employees and the subsequent effect such action had with respect to the profit sharing plan of the corporation, the evidence herein shows that the facts as to those matters were before the Court of Appeals in *H. S. D. Co.* v. *Kavanagh, supra,* and the respondent concedes on brief that those matters were urged on the court by the collector as grounds for holding that the trusts lacked permanency. While in its Opinion the court did not discuss the question of the permanency of the plan, its holding that the trusts were exempt disposed of that question adversely to the collector and to the respondent's position here.

As to the respondent's contention that the corporation made no contribution to the executive trust for the fiscal year 1948 and that in that year it apparently abandoned the profit sharing plan as to the executive trust, the evidence shows that the corporation's only contribution to the trust for the year was $97.50 for expenses. The corporation's income for the year and the profit sharing formula contained in the trust agreement for that trust indicate that a larger contribution possibly should have been made. However, the evidence shows that during the fiscal year 1949 the corporation went into liquidation and further that during the fiscal year 1948 it disposed of all its exhaustible assets, including automobiles and office equipment. Apparently the corporation's disposition of such assets was preparatory to going into liquidation the following year and was dictated by business requirements. In this situation, and since it does not appear that the corporation made any contributions to the trust after the fiscal year 1948, it appears that during the fiscal year 1948 it abandoned the profit sharing plan as to the executive trust.

In *E. R. Wagner Manufacturing Co.*, 18 T. C. 657, where the question of permanency of a profit sharing plan was involved we said:

Congress inserted many requirements in sections 23 (p) and 165 (a) but did not provide that the plan had to be permanent * * *. A plan involving a single contribution was held permanent enough to exempt the trust under section 165 (a) in *Lincoln Electric Co. Employees' Profit-Sharing Trust* v. *Commissioner*, 190 F. 2d 326, reversing 14 T. C. 598. * * *

Here the corporation's abandonment of the profit sharing plan as it related to the executive trust occurred after the plan had been in operation for approximately 6 years and apparently was made preliminary to the liquidation of the corporation. Under the circumstances it cannot be said that such abandonment indicates that the plan was lacking in permanence as respondent contends.

In view of what has been said above, we hold that the executive trust was exempt from tax under section 165 (a) of the Code at the time of the distribution to the petitioner in November 1948 of the

decedent's interest therein. Having reached the foregoing conclusion, it becomes unnecessary to consider the effect here of the holding of the Court of Appeals in *H. S. D. Co.* v. *Kavanagh, supra,* that the Commissioner was without authority to revoke, as recited in his letter of April 8, 1948, the rulings of exemption of the trusts theretofore made.

Since under section 165 (a) of the Code the executive trust was exempt from tax when the decedent's interest therein was distributed, since decedent had made no contributions to the trust, and since the entire amount of his interest was paid to petitioner during her taxable year 1948, said amount, under section 165 (b), is to be considered a gain from the sale or exchange of a capital asset held for more than 6 months.

*Decision will be entered under Rule 50.*